LOTTINGER, Judge.
This is a suit in tort filed by Mrs. Arthur O. Sinclair against Walter J. Cook, Jr. and his liability insurer, Hardware Mutual Casualty Company for the death of her late husband, Arthur O. Sinclair. At the time of the accident Mr. Sinclair, the deceased, was a pedestrian, and Walter J. Cook, Jr. was driving the car which struck decedent. Mrs. Sinclair claims damages in the amount of $46,000. The Lower Court awarded judgment in favor of petitioner and against defendants in the sum of $10,000, and the defendants have taken a suspensive appeal.
The accident in' question occurred on Florida Street in the city óf Baton Rouge, Louisiana at approximately 12:30 p. m. on December 24, 1957. The weather was clear and dry, and visibility was good. Florida Street is one of the main thoroughfares of Baton Rouge running in a generally easterly and westerly direction. It is 42 feet wide and consists of two 10i/£ foot lanes going east and two lOjdj foot lanes going west, the east and west lanes being separated by a raised median line or dividing strip eight *248 inches wide and approximately three inches in height. At the time of the accident, young Cook, a boy of 15 years, was traveling in an easterly direction, and the decedent was attempting to cross Florida Street from north to south. The point at which decedent, then 70 years of age, was attempting to cross Florida Street was not at an intersection, but at a point approximately 46 feet east of the intersection of Florida Street and Gebeline Street. The record reflects that the decedent successfully crossed the two westbound lanes of traffic. However, on attempting to cross the two eastbound lanes, and upon entering the southernmost lane a distance of approximately two and one-half feet, he was struck by the left front fender of the automobile driven by young Cook. Death was almost instantaneous.
The Lower Court awarded judgment in favor of petitioner and against the defendants in the sum of $10,000, said amount being the liability policy limits held by the defendant, Walter J. Cook, Jr. The defendants have taken a suspensive appeal from the said judgment.
The record discloses that, a short time prior to the accident, defendant was traveling in an easterly direction on Florida Street. At a distance of three blocks west of the scene of the accident, the defendant driver stopped for a red light along with other traffic. In stopping at the red light, defendant’s vehicle was in the right, or southernmost lane of traffic, and the vehicle operated by Mr. Edwin Salvant was in the inside lane of traffic headed east. These two vehicles were the first cars to proceed irom the intersection after the change of the signal light to green. Mr. Salvant, who testified on behalf of petitioner, stated that he pulled away from the stopped position prior to young Cook. Upon approaching the scene of the accident, he saw decedent standing in the middle of Florida Street, between the east and westbound traffic, ar.d Mr. Salvant stopped to allow decedent to cross the street in front of him. From the time Mr. Salvant left the stop light until the time that he stopped to allow decedent to cross, the Cook vehicle remained in the rear of the Salvant vehicle. When Mr. Salvant stopped to allow decedent to proceed, decedent successfully crossed the inside lane, however, when he heard the screech of brakes, evidently from the Cook car, the decedent looked up and began to run across the outside lane of traffic which was then occupied by the Cook vehicle. Mr. Salvant testified that to his knowledge the first time the decedent looked up was when he heard the screech of brakes. Mr. Salvant testified that in proceeding from the red light to the scene of the accident he traveled approximately 35 m. p. h., however, when the accident happened, he was either stopped or almost stopped. During the interval that he left the red light to the time of the accident, he testified that the Cook vehicle was behind him, however, he does not know which lane it occupied. The record reflects, however, without doubt, that the point of impact was two and one-half feet south of the line dividing the two eastbound traffic lanes, or eight feet north of the southern edge of Florida Street. The extreme left front of the Cook vehicle struck the decedent just about at the left headlight.
The record reflects, by testimony of the investigating officers, that the Cook vehicle left light skid marks as follows: on the right side for a distance of 43 feet before the impact and 45 feet after the impact and on the left side for 22 feet before the impact and 42 feet after the impact. Young Cook testified that after leaving the stop light, he traveled in the outside lane of traffic at a speed of 35 to 40 m. p. h. He first saw decedent when he was at a distance of 100 to 120 feet from the point of impact, at which time decedent was standing on the dividing strip in the center of Florida Street. Upon first seeing him, young Cook testified that decedent was in a position of safety and that he believed he was going to stay there. Upon noticing the car of Sal-vant slow down, young Cook testified that *249 he thought the driver thereof was preparing to make a left turn into a driveway. Young Cook next noticed decedent when decedent was about in the middle of the two lanes going east, at which time he immediately blew his horn and hit his brakes. The record reflects that when young Cook blew his horn, the decedent looked up and ran into his line of travel.
As a result of the collision, the decedent was thrown or carried a distance of approximately 76 feet from the point of impact. He came to rest on the southern curb of Florida Street, and death was almost instantaneous. The vehicle driven by Cook came to rest at a distance of approximately 30 feet west of the final resting place of decedent, at a 450 angle to Florida Street, with its front half off the southern curb and the rear half in the southern lane of traffic.
Two police officers who were at the home of one of the said officers situated just a few feet from the scene of the accident testified that, prior to the accident, the Cook vehicle was in the inside lane of traffic and that, upon young Cook noticing the slowing down, or stopping, of the Salvant car, he pulled out into the outside lane to pass Mr. Salvant. These officers, who saw the Cook vehicle just a split second before the accident, their attention being called thereto by the screeching of the brakes, testified that it appeared to them that young Cook was traveling about 45 m. p. h. The record shows, without question, that the speed limit in the area was 40 m. p. h. Mr. Doyle, an expert witness on behalf of defendant testified that, in his opinion, young Cook was traveling at approximately 40 m. p. h., as he testified that ten feet must be subtracted from the skid marks to cover the distance between the front and rear wheels. In other words, at the time the skid marks began by the rear wheels, the front wheels were approximately ten feet to the front thereof.
Considering the record as a whole, it appears to us that young Cook was not exceeding the 40 mile speed limit. According to Blashfield Encyclopedia of Automobile Law, Volume 9C, Page 6237, a vehicle traveling at a speed of 40 m.- p. h. would require a total braking distance of 71 feet to come to a complete stop. The reaction time prior to the brakes being applied would require 44 feet, making a total stopping distance of 115 feet. According to the chart contained in Volume 14, Page 503 of the Tulane Law Review, a vehicle traveling 40 m. p. h., and, under excellent conditions would have a net braking distance of 62 feet, and a total stopping distance of 106.7 feet, which gives a reaction distance of 44 feet. However, this chart, provides that a vehicle traveling 40 m. p. h., under average conditions would require a net braking distance of 88.8 feet, and a total stopping distance of 132.8 feet. In his chart, which is filed in record, Mr. Doyle used a coefficient of friction of .64. In the Tulane Law Review chart the coefficient used under its measurements for excellent condition was .85, and its coefficient used in its measurements for average conditions was .60.
According to the speed charts, it certainly appears that young Cook was traveling at a speed of no greater than 40 m. p. h., however, even if we were to assume that he may have been traveling slightly in excess thereof, which we do not believe to be true, the record indicates that such excessive speed, if any, would not have been a contributing factor to the accident, and his negligence therein would have been passive. Prior to the impact the longest skid mark made by the Cook vehicle was 43 feet which indicates that young Cook could not possibly have stopped prior to hitting the decedent, considering the point at which he applied his brakes. The record, as a whole, indicates that the last clear chance for avoiding this accident was upon the decedent himself. At the time young Cook first saw decedent, he was standing on the dividing strip which was a position of relative safety. Upon next noticing him, decedent was crossing the inside eastbound traffic lane in an attempt to continue across the *250 outside lane. Upon noticing the perilous position of decedent, young Cook blew his horn and applied his brakes. According to the testimony of Mr. Salvant, the decedent was not paying any particular attention to oncoming traffic, as he did not look up until the blowing of the horn and application of brakes of young Cook.
There is some testimony to the effect that young Cook should have noticed the peril of decedent sooner. According to the testimony of the officers who were standing in the home nearby, young Cook had been behind the Salvant vehicle, and upon its stopping, pulled to the right in an attempt to pass it. Had this been the case, there would have been some moment during which the Salvant vehicle was between decedent and young Cook, during which moment young Cook could not have observed the movements of decedent because of the obstruction. The only testimony to rebut that of the two officers was the testimony of young Cook himself as well as his young lady friend, both of whom testified that the Cook vehicle remained in the outside lane of traffic at all times. While it appears to us that the testimony of the two officers was correct on this score, even were we to assume that the Cook car did stay in the outside lane, at some moment prior to the accident the Sal-vant car still would have obstructed his view of decedent because the Salvant vehicle was preceding young Cook in the left eastbound lane.
There is furthermore some claim by plaintiff that young Cook could have turned to the right to avoid hitting the decedent. Young Cook was faced by a sudden emergency which was not of his own making, and upon noticing the perilous position of decedent, immediately blew his horn and applied his brakes. This was a normal reaction, and, considering the emergency facing him, we do not believe that he can be held bound for failing to cut to the right. The evidence does not reflect that he did not attempt to turn to the right to avoid decedent.
The record reflects that the decedent created an emergency by leaving his position of safety on the center dividing strip of Florida Street. When young Cook saw the position he was in, he blew the horn and applied his brakes, the decedent looked up and ran in front of the approaching car. We believe the last clear chance of avoiding this fatal accident was upon the decedent himself. Had he not run, the accident would not have occurred.
For the reasons hereinabove assigned, the judgment of the Lower Court is reversed. All costs of this appeal to be paid by petitioner.
Judgment reversed.