ELLIS, Judge.
As a result of an automobile accident which occurred on May 4, 1959 on Plank Road in Baton Rouge, Francis R. Fendlason and his wife, Mrs. Ollie B. Fendlason, filed this suit to recover damages for personal injuries incurred by the latter, and special damages incurred by the former, against Byron G. Barber, the driver and owner of the car which allegedly struck the car Mrs. Fendlason was driving and against Barber’s insurer, Allstate Insurance Company.
The case was duly tried in the District Court and with oral reasons dictated into the record judgment was rendered in favor of the plaintiffs and against the defendant. After motion for new trial was denied the defendants appealed to this court, and plaintiff, Ollie B. Fendlason, has filed an answer to the appeal in which she prays that the amount awarded her by the lower court of $3500.00 be increased to $7500.00 and as thus amended the judgment be affirmed.
Plaintiffs in their petition charge that the sole and proximate cause of the accident was the negligence of Barber in failing to keep a proper lookout; traveling at an excessive rate of speed under the circumstances; failing to have his vehicle under control and failing to see what he should have seen in time to avoid the accident, and, in the alternative, that Barber had the “last clear chance” to avoid the accident and failed to do so.
On the other hand, the defendants, by way of their answer, denied any negligence on the part of Barber and set forth that the accident was caused solely by the negligence of Ollie B. Fendlason in that:
1. Mrs. Ollie B. Fendlason attempted to execute a left turn to enter the left lane for north-bound traffic on the Plank Road from the right lane for north-bound traffic on said Plank Road without first ascertaining that the way was clear to do so.
2. Mrs. Ollie B. Fendlason failed to keep and maintain a proper lookout.
3. Mrs. Ollie B. Fendlason failed to keep and maintain the automobile which she was driving at the time of the aforesaid accident under proper control.
4. Mrs. Ollie B. Fendlason failed to exhibit a proper signal before attempting to enter the left lane for north-bound traffic on the Plank Road from the right lane for north-bound traffic on said Plank Road.
*816 Defendants alternatively asserted the affirmative defense of contributory negligence.
According to the undisputed facts, Mrs. Fendlason, accompanied by her sister, Mrs. Leah Brown, as a guest passenger, was driving the latter’s car on the afternoon of May 4, 1959, and pulled into Shelley Street and drove up to its intersection with the Plank Road and stopped. She intended to turn to her right and into the outside northbound traffic lane but before doing so she evidently looked for approaching traffic to the south for she saw the automobile of the defendant approaching from that direction in the inside lane for north-bound traffic on Plank Road, but feeling confident that it was at such a distance that she could make the turn in safety and there being no traffic in the outside lane, she then turned north on Plank Road in the outside lane of travel, thus leaving the inside lane open. She then decided that she would angle over into the inside lane of traffic. There is a serious dispute as to whether she gave the proper signal for this change from the right outside north-bound traffic lane to the left inside north-bound traffic lane on Plank Road. However, she “angled” into the inside lane of traffic and was struck on the extreme left rear portion of her automobile by the right front portion of the Barber car just before or after she had gotten the left rear end of her automobile into the inside northbound lane at a point six feet east of the center media of Plank Road and seventeen feet west of the east curb of Plank Road and ninety7four feet north of the north parallel of Shelley Street. It is shown that Plank Road is a four lane highway with a center media and on each side are two lanes for north-bound traffic and two for southbound traffic. The two north-bound lanes are twenty-three feet in width giving each lane eleven and one-half feet in width.
It was plaintiff’s contention in the District Court and is in this Court that she had completed her angling change from the outside to the inside lane and traveled two or three car lengths in that lane before she was struck, and that, therefore, the case presents a simple rear end collision in which the defendant Barber was guilty of negligence which was the proximate cause of the accident in failing to keep a proper lookout, and alternatively that he had the last clear chance to avoid the collision.
On the other hand, it is Barber’s contention that Mrs. Fendlason’s actions created a sudden emergency in that she attempted to change her traffic lane from the right to the left in a manner and at a time when the defendant Barber’s car was so close that he was unable to avoid the collision.
The Lower Court decided the case with oral reasons upon completion of the trial and stated that he believed the Fendlason car had been in the inside lane for “some appreciable time before the accident occurred,” and that she had not created an emergency in changing from one lane to the other and, therefore, the defendant was negligent in that he did not keep a proper lookout; that if he had seen what he should have seen he could have avoided the collision.
Let us examine the facts, bearing in mind that the burden of proof is upon the plaintiff to establish her case by a preponderance of the evidence and the same burden rests upon the defendant to establish his alternative plea of contributory negligence.
There is no question of visibility as this collision occurred during the afternoon. The plaintiff with her sister as a guest passenger pulled up to the intersection of Shelley Street and Plank Road, which is a. four lane highway, looked to the south and saw a car in the inside north-bound lane of Plank Road about a block distant from the intersection. Plaintiff then placed her car in low gear, turned right into the outside north-bound lane of Plank Road and after traveling an estimated distance of two or three car lengths, began to angle over into-the inside north-bound traffic lane of Plank Road which was the same traffic lane in *817 which the defendant’s car was traveling. As a matter of fact, the car which plaintiff saw when she stopped at the intersection of Shelley and Plank Road to observe traffic approaching from the south was actually the defendant’s car. It is plaintiff’s testimony as well as her sister’s that just before she angled over into the left north-bound traffic lane she looked and gave a signal with the blinker light, looked out the window and in the rear view mirror and signalled with her hand. She got into the inside lane and had gone “as much as two to three car lengths and as the red light came on ahead of me there was as much as two cars that I know of, ahead of me, slowing down or stopping for the red light, and I was coming to a stop when I was hit in the back.” (The evidence shows that the red light was two hundred twenty-two feet from the point of impact.) In addition, on the trial of the case, plaintiff testified that when she looked back after giving the hand signal and putting on the blinker light for her angling change from the right outside north-bound lane of traffic to the left inside north-bound lane of traffic, she saw a car, which would actually have to be the defendant’s car, a distance which she estimated of about one-half block away, or, as she stated, in different language, not near enough to prevent her successfully making the change in traffic lanes. This testimony is in direct conflict with that which she gave in a discovery deposition on May 13th, 1960, which conflict was brought out in the following testimony:
“Q. I will read you from your deposition and tell me if this is correct? Question: Pardon me, but did you look in your rear view mirror before you began to angle over ? Answer: I did— I didn’t see anybody. Question: Did you look out of the window too? Answer : I did. Question: How far could you see behind you? Answer: Well, I’d say as much as a block. Question: And you didn’t see any cars at all? Answer: Didn’t see anybody' — any cars whatsoever. Now was that your testimony? A. I meant in the immediate area to where I could see.
“Q. You said ‘any cars whatsoever’ was that your testimony? A. Well, if that’s what you got down there, I guess it is.
“Q. And are you saying now that you saw a car or that you didn’t, which is correct ? A. I saw that car about a block below, but it wasn’t in any immediate area as to be close enough that I couldn’t pull over in the left lane.
“Q. You are saying now that you did see a car? A. Yes.
“Q. And you had seen that car as you pulled out into Plank from Shelley ?
A. Yes.
“Q. And at that time it was about a block away? A. Yes.
“Q. And just before you angled into Plank you saw it again? A. Angled into Plank?
“Q. Angled into the left lane? A. Yes.
“Q. And how far was it from you then? A. Well, I would say as much as a half a block or more.
“Q. About a half a block ? A. Plenty of time that I could have got in on the left lane.”
On the other hand, the defendant testified that he had been playing badminton at his home and one of the rackets had broken and he had taken it back to the store from which he had purchased it and secured a replacement and was returning to his home to continue with the badminton game. He also testified that he was in a hurry to get back to his home and was proceeding north in the inside lane of travel on Plank Road; that as he approached the intersection of Shelley Street and Plank Road he saw the plaintiff’s car approach the intersection and at the same time a car turned left from the southbound traffic lane of Plank Road in order to *818 cross the north-bound traffic lane and continue on into Shelley Street, and that it was necessary that he materially slow the speed of his car in order to avoid striking the motor vehicle. It cleared his traffic lane and he evidently pressed hard on the accelerator and at the same time he saw the plaintiff’s car proceeding in the outside north-bound traffic lane of Plank Road. After defendant had crossed the intersection, plaintiff’s car drifted toward the center line and then drifted back when he became aware of the fact that the plaintiff intended to angle over into his lane and although he did not recall applying his brakes, he did apply them because there were nine feet of skid marks prior to the time of the impact made by the defendant’s car. According to his statement, the plaintiff’s car was too close for him to avoid the collision at the time that he realized that the plaintiff had begun to angle into his lane of travel.
The physical facts show that the collision occurred ninety four feet north of the intersection of Shelley Street and Plank Road and six feet east of the center media of Plank Road. The defendant estimated his speed at 35 miles per hour at the time that he realized that the plaintiff was going to angle into his lane of travel. There is some testimony by the defendant when hard pressed by counsel for plaintiff that it was possible that he could have been going 45 miles an hour, however, considering the whole testimony we believe that the record proves his speed to be approximately 35 miles per hour at that time. Mr. Alvin Doyle qualified as an expert and testified that at the moment of impact either the plaintiff’s or the defendant’s car was at a slight angle and he based this testimony upon the damage to the plaintiff’s left rear fender. He also stated that if the defendant was traveling at 35 miles per hour that his reaction distance would be 51 feet, which is the distance traveled in one second, and, adding the nine feet of skid marks to the point of impact, that the defendant at the time he realized that the plaintiff intended to cross into his lane of travel was 60 feet away, and, therefore, could not have avoided the collision. The defendant had therefore traveled only thirty four feet from the intersection of Shelley Street and Plank Road when he fully realized the necessity for applying his brakes.
While the District Court, as well as this Court, does not believe that the plaintiff and her sister were very good judges of distance and do not know whether they realized that the length of a car was approximately sixteen feet, nevertheless, should we use the estimate by the plaintiff and her sister of the two or three car lengths that they .traveled before deciding to change lanes, it would be corroborative of the defendant’s testimony and the physical facts, accepting 35 miles per hour as the speed of defendant’s car, as it would place the plaintiff’s car anywhere from 32 to 48 feet from the intersection when she attempted to change lanes. We cannot accept the plaintiff’s estimate that the defendant was one-half block away at the time she she says she looked back preparatory to changing lanes, unless she meant a very short block. It is shown that the block she was traveling in between Shelley and Evangeline was approximately 314 feet in length. This distance should have placed defendant well below the intersection. In addition, Mr. Doyle estimated that the plaintiff had slowed the speed of his car from 35 to 25 mils an hour at the moment of the impact and that from the damage to the rear of plaintiff’s automobile he believed that the difference in speed was five miles per hour at that time. Due to the minor damage shown in the photograph of the car driven by Mrs. Fendlason we are constrained to agree that the difference between the relative speeds of the two vehicles was but five miles per hour. In other words, the plaintiff was traveling twenty miles an hour at the moment of impact and the defendant twenty-five.
Much is made of the fact that both cars were apparently within the inside northbound lane of traffic at the moment of im *819 pact. It is shown by the testimony of the officers who investigated the collision that the plaintiff’s car was slightly over the dividing line between the two lanes. This is not conclusive evidence of the fact that the plaintiff had been traveling for any distance material to this lawsuit in the inside lane prior to the impact. The mere fact that the defendant struck the left rear fender of plaintiff’s car from the rear and that both were in the inside lane of travel at that time does not destroy the proof consisting of direct testimony as well as physical evidence that the plaintiff created a sudden emergency by changing from the outside to the inside lane at a time when the defendant was approximately sixty feet to her rear. It is difficult to believe under the facts in this case that the plaintiff actually looked just prior to changing lanes. The testimony leads us to believe that plaintiff, having seen the defendant’s car in the distance which she estimated at approximately a block, as she entered the intersection of Shelley Street and Plank Road, assumed at the time she decided to change lanes that it was still a safe distance to her rear. We conclude that at the time she changed lanes she failed to see what she should have seen.
The testimony fails to substantiate the alternative allegation of plaintiff that the defendant had the last clear chance to avoid this accident. The defendant had less than two seconds at the time he realized the plaintiff was actually going to change lanes.
We are of the opinion that the facts of this case bring it squarely within the doctrine and the law as enunciated in Mooney v. American Automobile Insurance Company, La.App., 81 So.2d 625, Sanders v. Hisaw, La.App., 94 So.2d 486, and Marrero v. Richard, La.App., 98 So.2d 305, which placed the burden upon the driver of a motor vehicle changing from one lane to another to see that such a change-over could be made safely without any interference with traffic in the opposite lane. It is apparent that at the time when the plaintiff decided to change her lane of travel that the defendant’s car was much, much too close for her to safely make the maneuver or even to assume that she could safely make the maneuver.
For the above and foregoing reasons the judgment of the Lower Court is hereby reversed and set aside and it is now ordered that there be judgment in favor of the defendant, dismissing the plaintiff’s suit at her costs.
Reversed.