HAGAN STORM FENCE COMPANY OF MISSISSIPPI *v.* EDWARDS

No. 42419 January 14, 1963 148 So. 2d 693

*Carey E. Bufkin, Patrick H. Scanlon, Satterfield, Shell, Williams & Buford,* Jackson, for appellant.

*James L. Young, Young & Young, Melvin B. Bishop, Daniel, Coker & Horton,* Jackson, for appellee.

McGehee, C. J.

On this appeal it is assigned as error, among other things, that the trial court erred in admitting the opinion testimony of one Alvin Doyle, who is referred to in the brief of appellee and in some of the intermediate State Courts of Appeal cases and federal decisions as an accidentologist, upon the theory that his experience as an operator of a large automobile repair shop at Baton Rouge, Louisiana, his training and experience in determining which automobile was responsible for the collision in an automobile accident on the highway, his experience as a photographer, in judging the rate of speed of the respective automobiles involved in an accident, the point of impact, the angle of the respective cars when they collided, and as an automotive engineer consultant of several years experience at the Louisiana

State University, rendered such testimony competent. Doyle's testimony was objected to by the appellant, and the objection was overruled by the trial court. We think the trial court erred in overruling appellant's objection of the opinion evidence.

We shall deal only with the assignment of error disclosed in the foregoing paragraph. We would affirm the case insofar as the other alleged errors are concerned.

The appellee James Edwards was driving northward at the intersection of Wiggins Road, running generally north and south, and Gault Street, running generally east and west, in the City of Jackson, Mississippi. On August 19, 1960, Theron M. McGregor was travelling in an easterly direction on Gault Street in a Volkswagen, and at that time was engaged about the business of his employer Hagan Storm Fence Company. His vehicle collided with the Chevrolet panel truck which was travelling northward on the Wiggins Road, as aforesaid. The testimony of witnesses other than Alvin Doyle disclosed where the two vehicles came to rest respectively, and the photographs which were taken at or near the time of the accident were introduced before the jury. Mr. Doyle arrived in Jackson the day before the trial in July 1961 and visited the scene of the accident and he based his conclusion as an expert witness on the position of the automobiles as related to him by others, the angle of the vehicles, and the photographs shown him, and placed the responsibility for the accident upon the Volkswagen driven by T. M. McGregor, employee of the appellant Hagan Storm Fence Company, and with the result that a verdict of $20,000 was rendered against the said defendant.

The drivers of both the Volkswagen and the panel truck suffered from amnesia after the accident and neither of them could recall anything whatever about how the accident occurred. Therefore the trial court permitted the testimony of Mr. Doyle to be given as an expert on

the ground of necessity, and of his qualifications as such as testified to by him.

It should be observed that Mr. Doyle had no facts before him on which to reach his conclusions that the jury did not have. He testified from photographs that had been introduced in evidence, the location at which the two vehicles came to rest as necessarily related to him by witnesses, and testified as to the indicated speed of each automobile at the time of the accident, and of course he did not know the point of impact except from hearsay, and on the basis of his experience as hereinbefore set forth.

There is nothing complicated about this intersection collision of the two vehicles. The car which is alleged to have been at fault was travelling east and struck a car in the intersection which was travelling north.

In the case of Illinois C. R. R. Co. v. Williams, et al, 242 Miss. 586, 135 So. 2d 831, this Court, speaking through Mr. Justice Ethridge, stated in its opinion: "Where the facts can be produced and presented to the jury or other trier of facts by direct evidence, in such a manner that they can have an adequate basis for formulation of their own decision, without extraneous assistance, opinion evidence (such as that here) should not be admitted. Ordinarily a witness must confine his testimony to matters within his own knowledge." Citing authorities.

 █ In this state a trial by jury is guaranteed by our State Constitution. It is the view of the writer of this opinion that the testimony of Doyle was a clear invasion of the province of the jury, and this Court has repeatedly rejected testimony which has undertaken to invade the province of a jury. We assume that it is wholly unnecessary to cite cases upholding the constitutional right of trial by jury and holding that testimony which invades the province of the jury is inadmissible in this state. The appellee in his brief says: "* * *

it is a matter of interest and significance that his testimony in the following recent reported cases has been accepted without question and relied upon by the respective courts in their opinions: Fendlason v. Allstate Insurance Company, (Court of Appeal, La., 1961) 136 So. 2d 814; Swillie v. General Motors Corporation, (Court of Appeal, La., 1961) 133 So. 2d 813; Sinclair v. Cook, (Court of Appeal, La., 1961), 128 So. 2d 247, and Randall v. Baton Rouge Bus Company, (Court of Appeals, La., 1959) 114 So. 2d 98." It is to be noted from the above that these cases are from intermediate Courts of Appeal in the State of Louisiana and that the appellee does not cite any state Supreme Court decisions on this point supporting his contention in this case. We have no cases by our own Supreme Court which uphold the admissibility of testimony of this type.

The witness claimed that he had testified in the courts of twelve states, including testimony in the state and federal courts of Mississippi. We do not know whether this testimony was objected to or not, but we are of the opinion if it had been objected to the objection should have been sustained.

It has been the uniform rule in this state that we let the witness tell the facts and leave it to the jury to determine the conclusion to be drawn from the facts.

We think that this case should be reversed and remanded for a new trial because of the error in the admission of the testimony of Mr. Doyle as an expert accidentologist.

Reversed and remanded.

*Lee, Kyle, Gillespie, and McElroy, JJ.*, concur.

GILLESPIE, J., specially concurring:

I concur in the holding that the testimony of Alvin Doyle, Jr., was not admissible. In this particular case I agree that his testimony invades the province of the jury, but I would reject it for the reason that the tes-

timony with reference to the respective speeds of the two vehicles and their angles and locations at the moment of impact, and one second before the impact, is so unreliable as to have no probative value. After reading this testimony, it is my considered opinion that the law should not allow the rights of litigants to hang by so tenuous a thread.

In general, I believe the law should always be ready to accept the aid of science in the search for truth, and it has been true that courts have probably been too slow in some instances to accept the findings of science. On the other hand, I am unwilling to accept a new way until it is proven to be reliable and a better method of finding facts than what it seeks to replace.

The witness came to Jackson and view the scene about a year after the accident. He viewed aerial photographs, photographs of the two vehicles, and examined one of the vehicles. He was told where the debris fell. From these he undertook to tell the jury the speed of one vehicle a second before the impact, the relative speeds of the vehicles at the time of impact, and the angle of the vehicles when they struck. He based all of his findings on the assumption that the heavier vehicle was diverted in its course by the impact with the Volkswagen. He had already assumed the angle at impact and eliminated the probability that the driver had a part in diverting the course of the panel truck. It appears that he assumed that the vehicles came together without either driver having made any attempt to swerve. This may have been true, but it is against all experience. These two vehicles were in charge of drivers who had the power to control them. This witness seems to assume it was a collision between two unmanned objects, the lighter Volkswagen and the heavier panel truck. He does not take into account the probabilities that the driver of the panel truck or the driver of the Volkswagen, or both, may have (1) skidded at an angle just before the

impact, or (2) turned the steering wheel to the right, or (3) turned the wheel to the left. All these other things could have a bearing on who got to the intersection first and who was traveling the fastest.

It is not valid to compare this witness with experts in the field of ballistics, fingerprints, and handwriting, for in all these fields the experts show to the trier of facts enlarged photographs that demonstrate beyond any question the validity of their science, and the facts upon which they base their conclusions. A juror or a judge can see for himself what the expert sees and on which he bases his conclusions. In reality, this witness reached his conclusions of fact on methods not explained to my satisfaction. He referred to kinetic forces, but did not explain any laws of motion. The average juror knows something of these laws, and if the juror is allowed to assume as many facts as the witness, his conclusions would probably be about as accurate.

When the time comes that such expert can demonstrate that he can reliably deduce the relative speed of two vehicles to a differential of five miles an hour, the angle of the vehicles at impact, and what diverted their courses, then such testimony ought to be admitted. Until then I think it best to keep the rules that time and experience have proven reliable. I do not want to belittle this witness on all counts. I am sure he could be a valuable aid in some cases. But in this case I am unable to place any confidence in his testimony. Therefore, I think it has no probative value and ought not to be admitted.

Some experts qualify their testimony by showing that they are members of recognized professions. All other so-called experts should not expect the courts to accept their findings until the witness is able to demonstrate that his science is reliable.

*Lee, Kyle, and McElroy, JJ.*, join in this opinion.

JONES, J., dissenting:

It is with extreme reluctance and the greatest deference that I differ from the majority of my associates. A deep conviction, however, compels me to record my conception of the issue.

I do not think our cases have foreclosed the admission of expert evidence in a case such as this. We agree with the majority opinion that Mr. Doyle had no *facts* before him, on which to reach his conclusions, that the jury did not have. Our contention is that he had a superior knowledge, which enabled him to make deductions and inferences from the known facts, explaining how the accident happened.

Within the past twenty-five years, there have been great advancements made in the art of scientific evaluation of automobile accidents. The average man knows little about reaction time, braking power, and stopping distance; about the laws of motion, geometric formulae of acceleration and deceleration, and coefficient of friction; the laws of physics and dynamics. The average man has little practical experience in investigating accidents, and testing and familiarizing himself with the various aspects of automobile accidents.

Despite these facts, the majority opinion rejects the usefulness of testimony of an expert in this field. The drivers of the two vehicles had amnesia, and could not remember what happened. Elimination of Doyle's testimony deprives the jury of any experienced standards by which to evaluate the data introduced in the record, including photographs of the vehicles, their positions before and after the impacts. If trial by jury in automobile accident cases is to accomplish its objectives, the law must take a more enlightened outlook on the problem of admissibility of expert opinion and other scientific, objective data relating to the laws of motion.

Doyle is an automotive engineering consultant. He is a college trained graduate in mechanical and automotive engineering, served as head of the automotive de-

partment at Louisiana State University from 1949 through 1955, is a licensed photographer, and has written numerous articles on scientific evaluation of automobile accidents. He is a journeyman mechanic, and part owner of a large automotive repair shop in the City of Baton Rouge. Hence his. experience, education and training are both practical and theoretic. The questions propounded to him by appellee were based on certain undisputed physical facts and stated assumptions. His opinions, based on those questions, as an expert, were rational and intelligent. The jury could accept or reject them, as with the testimony of any expert.

The case of Illinois Central R. Co. v. Williams, 242 Miss. 586, 135 So. 2d 831, cited in the majority opinion, is not applicable here. A reading of that opinion will show there was evidence in the record from which a man of ordinary intelligence and general knowledge could form the opinion about which the experts were undertaking to testify. However, as hereinafter shown, the court in that opinion forecast the admissibility of expert testimony in a case such as this.

The majority opinion says there are many Mississippi cases excluding testimony such as here offered, but the only ones we can find, as we see them, are not applicable, and, as a matter of fact, rather predict the admissibility of evidence such as this in proper cases. In Schumpert v. Watson, 241 Miss. 199, 129 So. 2d 627, testimony of a highway patrolman was rejected, but in that case there were witnesses testifying as to the facts, and there was no necessity for explanation of the facts by an expert. The case of Delta Chevrolet Co. v. Waid, 211 Miss. 256, 51 So. 2d 443, is another in which evidence of a highway patrolman as to an opinion was rejected. However, the man was not an expert, and also there was testimony of other witnesses as to the facts in the case. In Standard Oil Co. v. Crane, 199 Miss. 69, 23 So. 2d 297, the testimony of a state highway patrolman as to his opinion

of the point of impact at a time when an automobile had struck a cow was excluded, and our Court said on that:

"We do not decide whether the witness, who was a member of the State Highway Patrol, was an expert in interpreting signs of collision. The questions standing alone would produce no helpful answers, and, unless followed by a request for an expert version, would be without point. Ordinarily the interpretation of physical circumstances is a function of the jury. The location of the cow when struck could be determined by one not an eyewitness only by the location and extent of the gory evidences of its dismemberment strewn along the highway. Exclusion of this testimony deprived the jury of no helpful aid to its own powers of deduction."

Another case from Mississippi is Gray v. Turner, 145 So. 2d 470, where objection was sustained to the testimony of a police captain as to the speed of an automobile, his opinion being based upon the skid marks. In this case there were eye witnesses, and further with reference to such expert testimony, the Court said: "It was not error for the trial court to sustain defendant's objection to the testimony of Police Captain O'Brien. He was asked to give his estimate of the vehicle's speed with skidmarks of 120 feet. His testimony would have been based solely on a mathematical chart furnished him at a police academy. . . . . ." and the Court held that would be hearsay.

On this trial there was no eye witness. The only evidence was debris in the center of the intersection and two smashed cars in the ditch northeast of the debris. There was no evidence of a violation of any traffic regulation to make a prima facie case under Sec. 1742 of the Code of 1942.

The witness, Mr. Doyle, had been in business similar to this for a period of twenty years. He had a B. S. degree from L. S. U., and had studied in other universities. He specialized in mechanical engineering and

automotive engineering and had taught same. He knew something of the kinetic forces. He maintained a laboratory at Baton Rouge. He had been permitted to testify in twelve states. He had been permitted by the lower courts in this State, both State and Federal, to testify. He lectured before various bar associations on an analysis of automobile accidents. In my opinion, he was amply qualified to give his opinion.

In this situation, the lower court, exercising its discretion, permitted this educated, experienced and able man, familiar with the weights of cars, knowing something of kinetic force and its effects, who visited the intersection and examined pictures of the two vehicles made immediately after the accident, to give the jury the benefit of his experience, education and training. He made a logical deduction estimating that defendant's lighter car (by about 1500 pounds) was traveling faster than plaintiff's truck — not an exact estimate of the speed but saying it was from five to fifteen miles faster. This proof, if accepted by the jury (and they had a right, of course, to reject it), would enable them to find that plaintiff's truck entered the intersection first, and that defendant failed to yield the right of way to a vehicle approaching from his right.

Under the circumstances we think the lower court did not abuse its discretion, but acted correctly in admitting the evidence. Without this evidence explaining the situation, the jury would have had nothing upon which to base its verdict. There was no evidence of any violation of traffic regulations, nor as to which party, if either, did so. They simply had two cars smashed and in the ditch, with debris in the center of the intersection. We think this was a case of necessity, where evidence of this kind was needed by the jury in order to understand the situation as developed.

''Opinion testimony of experts is only admissible in cases of necessity, where the proper understanding of

facts in issue requires some explanation of those facts or some deduction therefrom by persons who have scientific or specialized knowledge or experience. Such testimony does, in a broad general sense, encroach upon the province of the jury; and when it relates to matters directly in issue, it should not be admitted unless its admission is demanded by the necessities of the individual case." 20 Am. Jur., p. 653.

In the same book, on page 654, it is said: "It clearly will not do to accept too literally or as universal the rule that opinion testimony cannot be permitted to be given upon an ultimate issue and thus invade the province of the jury. Apparently, the rule has never been regarded as an inflexible one. It is certainly contrary to the unmistakable trend of authority to exclude expert opinion testimony merely upon the ground that it amounts to an opinion upon ultimate facts. The modern tendency is to make no distinction between evidential and ultimate facts subject to expert opinion. The courts consider that it is more important to get to the truth of the matter than to quibble over distinctions in this regard which are in many cases impracticable. Accordingly, in many cases expert witnesses have been permitted to state facts known to them because of their expert knowledge, even though their statements may involve the ultimate fact to be determined by the jury. In support of this view, it has been said that the giving of an opinion by an expert upon an ultimate fact which the jury are to determine does not invade the province of the jury any more than does the testimony given by an eyewitness as to any other decisive fact. . . . . . ."

In 32 C.J.S., pages 236-237, under Evidence, subhead (b) reads: "A person specially qualified by skill or experience may state an inference or judgment as to matters connected with the management and operation of motor vehicles. Likewise a qualified witness may state an inference or judgment as to: Movements which

were made by a motor vehicle; the speed at which a motor vehicle was traveling, . . . . ."

Under the annotation with reference to speeding, there are cited cases from Kansas, Massachussetts, Missouri and Texas, and in the pocket parts are listed cases from Colorado, Georgia, Indiana, Maryland, Minnesota, New Mexico, Ohio, Pennsylvania, and Utah.

In 66 A.L.R. 2d an annotation begins at page 1048 on the admissibility of opinion evidence. On page 1050, the author says:

"Although some cases hold or recognize that skilled or expert opinion evidence as to the point of impact or collision is not admissible in motor vehicle accident cases, these courts, for the most part, taking the view that the subject matter is not one requiring skilled or expert opinion testimony, or that the admission of evidence of that kind improperly invades the province of the jury, or both, there is strong, and apparently growing, authority holding or recognizing that skilled or expert opinion evidence is admissible upon the question.

"These courts recognize that opinions given by skilled or expert witnesses aid the jury, or the court sitting in lieu thereof, in drawing correct inferences from the raw and unsorted facts, and that such evidence does not usurp the province of the jury, since the jury does not have to accept the witness' opinions. In addition, it may be noted that the cases holding or recognizing the admissibility of skilled or expert opinion evidence show that the witness giving the testimony had an opportunity to investigate the scene reasonably soon after the accident and had sufficient experience to form a reasonable opinion based upon his observations."

Further, it is said: "While it is a fundamental principle of the law of evidence as administered by our courts, both in civil and criminal cases, that testimony at a trial upon matters within the scope of the common knowledge and experience of mankind, must generally be confined

to statements of concrete facts within the observation, knowledge, and recollection of the witnesses, as distinguished from mere opinions, frequently the jury, or the court trying a case without a jury, is confronted with issues the proper understanding of which requires specialized knowledge or experience, and which cannot be determined intelligently merely from deductions made and inferences drawn on the basis of ordinary knowledge, common sense, and practical experience gained in the ordinary affairs of life, so that of necessity skilled or expert witnesses are permitted to give opinion testimony.''

On page 1057 of the same annotation, it is said: ''In holding that the point of impact between a car and truck involved in a collision was a proper subject for the admission of the opinions of a concededly qualified expert, the court in Een v. Consolidated Freightways (1954, DC ND) 120 F Supp 289, affd (CA8) 220 F 2d 82, noted that the physical facts and circumstances found immediately after the accident had prompted contrary inferences to be argued with equal earnestness by able and experienced counsel, and said that where the inference or conclusion to be drawn is not so obvious that it can be said that the jurors were as competent to reach it as one skilled through long experience, then the opinion of one who is so skilled is not only admissible but may be of aid to the jurors, adding that if the court had been sitting as a trier of facts, then, under the circumstances, it would have felt that the opinion of the witness would have been of assistance in determining the ultimate facts.''

''In Zelayeta v. Pacific Greyhound Lines, Inc., (1951) 104 Cal. App. 2d 716, 232 P. 2d 572, where the key question was whether the point of impact in the collision between a bus and an automobile was a proper subject for permitting expert opinion testimony, the court, holding that it was, said that whether expert

testimony was admissible or not depended upon whether the subject matter was within common experience or whether it was a special field where the opinion of one of skill and experience would be of greater validity than that of an ordinary juryman, and that, although it was obvious that conclusions based upon the facts of the particular case might be so obvious that any reasonable person, trained or not, could draw the same inference, it was equally clear that cases might occur where the opinion of trained experts in the field in question would be of great assistance to the members of the jury and that necessarily much must be left to the common sense and discretion of the trial court.''

A case where the court discusses decisions pro and con, and then holds in that particular case that evidence similar to that of Doyle was admissible, is Campbell v. Clark, 283 F. 2d 766, decided by the 10th Circuit. Without quoting at length, it is, in our mind, a very enlightening decision, and we quote the following from page 770:

''In view of the fact here that appellant was the only eye witness to the accident who testified; in view of the conflicts between his statement and his testimony; in view of the fact that appellee was unable to recollect anything concerning the accident; and in view ⸳of the qualifications of the expert, we think that the court did not abuse its discretion in admitting his testimony as a means of aiding the jury in reconstructing the scene in respect to the point of impact of the two vehicles and in respect to their respective angles at the time of the impact.''

In Illinois Central R. R. Co. v. Williams, cited by the majority opinion, we find the balance of the paragraph, from which the majority opinion quotes, reads as follows:

''The true criterion is whether a jury from this person can receive appreciable help. If the facts cannot

be presented or communicated, opinion evidence may be received. The facts concerning this crossing were adequately presented by direct testimony, photographs, engineers' surveys, etc. The basis of admission of expert opinion testimony is that of necessity. 7 Wigmore, Evidence (3d ed. 1940), Secs. 1918, 1923. . . . . .''

The effect of the majority opinion is to reject in automobile accident cases the use of scientific data and expert opinion. The jury is entitled to standards by which to evaluate the numerous data given it in an automobile accident, particularly where, as here, there are no available eye witnesses. Certainly expert testimony here would be of considerable value in developing the truth. James S. Baker, Scientific Reconstruction of an Automobile Accident, 25 Insurance Counsel Journal 439 (Oct. 1958); Reath, Scientific Data and Expert Opinion — Its Use in Automobile Accident Cases, 24 Insurance Counsel Journal 99 (Apr. 1957). Whether a particular expert witness is qualified must be left largely to the trial court's discretion, but the general trend today is toward the admissibility of adequately qualified, expert testimony on automobile accidents. 9C Blashfield, Cyclopedia of Automobile Law and Practice (1954), Sec. 6238. The cited article by Reath, 24 Insurance Counsel Journal 99, collects many of the decisions so holding. Among them are the following: Storbakken v. Soderberg, 246 Minn. 434, 75 N. W. 2d 496 (1956); People v. Herman, 20 N.Y.S. 2d 149 (1940); Monday v. Millsaps, 37 Tenn. App. 371, 264 S.W. 2d 6 (1953); Ferguson v. Hurford, 132 Colo. 507, 290 P. 2d 229 (1955); Anderson v. Eggert, 234 Wis. 348, 291 N.W. 365 (1940).

The majority opinion suggests that it would invade the province of the jury to admit expert testimony in automobile cases. But this reasoning begs the question, because there are many instances where expert opinion has been permitted to aid the jury. This would include medical questions of causation; the testimony of hand-

writing experts, ballistics experts, property appraisers. Nor will such evidence necessarily turn into a clash of partisan experts. The automotive engineer is not subject to the same partisan pressures to which an attending physician may be subject. Moreover, the ability to apply the laws of motion is distinctly much more of an exact science than the art of expressing an opinion on a question of medical causation. In the search for truth, the court should permit the use of adequately qualified experts in any area where scientific evaluation would be of assistance to the jury. Yet, unfortunately, the controlling opinion rejects the testimony of an experienced, qualified automotive engineer where there are no available eye witnesses.

From these authorities, it seems to us that where there are no eye witnesses and in fact there is nothing on which the jury could reasonably base their decision, and where the physical evidence leaves the question of what happened unexplained, a jury of ordinary, everyday citizens would welcome the opinion of someone with superior knowledge and experience. We do not mean to say that such testimony should be permitted in every case. It should be left to the sound discretion of the trial court. In the exercise of sound discretion, it should determine (a) that the witness is qualified by training and experience or otherwise; (b) his evidence would be of benefit to the jury, and (c) such evidence is necessary for the jury to have a better understanding of the facts presented to it.

When the trial court, in the exercise of a sound discretion, has adjudicated these matters and admitted such expert testimony, we do not think the case should be reversed. It is only where the court has abused this discretion, or such evidence is unnecessary and not of assistance to the jury, that it should be excluded. I do not think that is the situation here.

*Etheridge and Rodgers, JJ.,* join in this dissent.