DELTA CHEVROLET CO. *v.* WAID.

Division B.   Mar. 26, 1951.

No. 37842 (51 So. (2d) 443)

H. Talbot Odom and Watkins & Eager, for appellant.

**Smith & Jones,** and **Hardy Lott,** for appellee.

**Holmes, C.**

The appellee brought this suit against the appellant in the Circuit Court of Leflore County, demanding damages in the amount of $60,000.00 for the alleged wrongful death of her husband, who was killed instantly as the result of an automobile collision on the public highway. The action was brought under Section 1453 of the Mississippi Code of 1942, and inures to the benefit of appellee and the three minor children of appellee and her deceased husband. On the trial of the case in the court below, the jury returned a verdict for appellee in the sum of $47,000.00 and judgment was entered accordingly, and appellant appeals from said judgment.

Appellant has filed a suggestion of diminution of the record and a motion for certiorari to bring up the original verdict returned by the jury in the court below, and consideration is given to said suggestion and motion in connection with the consideration of the cause on its merits.

On Suggestion of Diminution and Motion for Certiorari

The verdict recited in the judgment is as follows: ''We, the jury, find for the plaintiff and assess her damages at $47,000.00.'' ▮▮ Appellant now seeks to have made a part of the record on appeal an unsigned writing on a

separate sheet of paper, purporting to be the verdict of the jury, and reading as follows: "We, the jury, find for the plaintiff in the sum of $47,000.00. We render this verdict in view of the fact that we believe that there were defects in the brakes and steering gear of the Cadillac Mr. Jennings was driving." This purported verdict was never marked filed by the Clerk.

Nowhere in the record does it appear that this purported verdict was the verdict of the jury on which the court below entered its judgment except that it is so stated in appellant's motion for a new trial, wherein appellant complains that such was the verdict and that the same was not responsive to the issue involved. However, no proof was introduced on the motion for a new trial and no record was made in the court below that such purported verdict was the verdict of the jury. The only record made in the court below as to the verdict of the jury is the recital in the judgment. As an appellate court, we are limited in our review to the record of the case as made in the court below and we are bound by such record. Any other course would be contrary to the proper functions of an appellate court. We can, therefore, only consider the verdict as recited in the judgment of the court below, since this is the only recorded verdict and is accordingly controlling and conclusive upon this court. These conclusions are supported by the prior decisions of this court. In the case of Burton v. Atkins, 199 Miss. 275, 24 So. (2d) 355, the court said: "It is complained that the verdict is insufficient in form and in contents to support the judgment. The verdict of which appellant speaks is an unsigned writing found apparently on a separate sheet of paper, but the verdict on which the court acted is recited in the judgment itself and thus the verdict recited in the judgment is the recorded verdict, and the verdict when and as recorded on the minutes is the only one to which the appellate court can look, 64 C. J. p. 1103; and certainly so when,

as here, there is nothing in the record to show that the jury did not amend their verdict and return it, before being released from the case, in the amended form recited in the judgment. 2 Thompson on Trials, Sec. 2635, p. 1920.''

Again in the case of Brown v. Sutton, 158 Miss. 73, 120 So. 820, the court said:

''The appellee suggests a diminution of the record and asks for certiorari to bring up the original verdict returned by the jury in the court below, and also to correct an instruction contained in the record alleged to be incorrect in that blank spaces had been filled in after giving of the same, and that the court adjourned before the discovery of such fact.

''As to the verdict of the jury, an inspection of the record shows that the judgment recites the verdict of the jury. This recital in the judgment is conclusive upon us as to what the verdict is, and we are bound by the record made in the court below upon that proposition. Should the record in that case contain two conflicting verdicts, the verdict recited in the judgment will be controlling and conclusive upon this court.

''It would serve no useful purpose to issue a certiorari to bring up the verdict written upon the back of the declaration as alleged, because, if it be the same, it is in the record already, and if it was different from that recited in the judgment, the judgment would control.''

It follows that appellant's motion for certiorari must be overruled.

### On the Merits

The collision in which appellee's husband, A. B. Waid, lost his life occurred on November 18, 1948 at about 11:20 o'clock A. M. on U. S. Highway 49E, about one mile South of Greenwood, Mississippi. The highway is straight for a long distance in both directions from the place of the collision. The highway is a concrete highway and is

twenty feet in width, except that from a distance of 100 feet from either side of a bridge, it gradually widens to a width of 24 feet across said bridge, the distance across said bridge being 160 feet. The elevation of the highway as it approaches said bridge from either direction is the same, and it is manifest from the testimony that the so-called bridge in said highway had no causal connection with the collision and only serves to help locate the approximate scene of the collision. On the occasion in question, it was raining and the highway was wet and slick. Four cars were at or near the scene of the collision. One was driven by E. L. Crabtree, a traveling salesman from Dallas, Texas, who had spent the night at a Tourist Court about three miles South of Greenwood, Mississippi, and was proceeding into Greenwood. Ahead of him and proceeding in the same direction was a 1946 Chevrolet pickup truck driven by A. B. Waid's brother, Roscoe Waid, and occupied also by the said A. B. Waid as a guest. In front of the Waid pick-up truck and proceeding in the same direction was a car driven by Chester Burkes. Approaching from the opposite direction was a Cadillac automobile driven by one J. C. Jennings, a mechanic in the employment of appellant, who was subjecting the said Cadillac car to a road test after having made certain repairs to its steering gear, front alignment and brakes, and other parts thereof, necessitated by a prior wreck in which said Cadillac was involved. There could have been only five eyewitnesses to the circumstances and scene of the collision, namely the drivers and occupants of the cars mentioned. A. B. Waid's lips have been sealed by death and his brother, Roscoe Waid, was rendered incompetent to testify because the injuries which he received in the collision so impaired his mental faculties as to render him insane. Therefore, resort must be had to the testimony of other witnesses and to the physical facts to fix the responsibility for the unfortunate tragedy.

The witness Crabtree testified that he was traveling at about 30 miles per hour and that the pick-up truck in which the Waids were riding was about 100 yards ahead of him and traveling at approximately the same rate of speed. He further testified that when the pick-up truck was about 75 yards from the South end of the bridge, it pulled around to pass the Chester Burkes car and was abreast of the Chester Burkes car some 30 or 40 yards from the South end of the bridge, and actually passed the Burkes car and got back into the lane of traffic on the East side of the highway before reaching the bridge. He further testified that the Cadillac was approaching from the opposite direction at a terrific rate of speed, estimated at 65 or 70 miles per hour, and that at a point about 100 feet North of the bridge, it skidded sideways in the path of the pick-up truck on the East side of the highway, knocking the pick-up truck backwards down the East side of the highway and turning completely around across the highway and facing Northwest.

The witness Joe Feagin testified that he came on the scene shortly after the collision and saw the position of the cars and that the bumper of the pick-up truck was lying on the East side of the highway and that there was no glass or debris on the West side of the highway.

The witness J. C. Jennings, admittedly driving the Cadillac as the servant and employee of appellant, acting within the scope of his employment, testified that it was raining and that the pavement was wet and that he was driving at a rate of speed of from 40 to 50 miles per hour and that the pick-up truck undertook to pass the Burkes car on the bridge and came abreast of the Burkes car, completely blocking the West side of the highway, and that, faced with this sudden emergency and undertaking to avoid a collision, he applied his brakes moderately and that the Cadillac was unavoidably caused to skid into and collide with the pick-up truck. He offered no explanation as to why, under these circumstances, the

Burkes car was not also struck, or as to why the pick-up truck was knocked backwards down the East side of the embankment, or as to how, under these circumstances, the collision occurred from 80 to 100 feet North of the bridge.

The witness L. E. McCorkle testified that Jennings told him in the hospital shortly after the collision that he didn't know how it happened except that when he hit his brakes they must have locked or grabbed.

The witness Chester Burkes testified that the pick-up truck passed him about 80 feet South of the bridge and that after the pick-up truck passed him the Cadillac began putting on its brakes and began to slide and turned across the highway and that he was unable to say whether the pick-up truck had then gotten back into the East lane of the highway or whether the collision occurred on the side or in middle of the highway.

Other witnesses testified to what they claimed were contradictory statements made by the witness Crabtree on other occasions.

Under this conflicting evidence, the case was submitted to the jury under proper instructions to determine the issue as to whether or not appellant, acting through its servant and employee, was guilty of actionable negligence in the operation of the Cadillac automobile on the occasion in question, and the jury found adversely to the appellant on this issue.

It is contended by appellant on this appeal (1) that the verdict of the jury is contrary to the overwhelming weight of the evidence, and that appellant was entitled to a peremptory instruction, and (2) that the court erred in excluding the proffered testimony of Highway Patrolman Parkinson, and (3) that the court erred in refusing appellant's Instruction No. 10, and (4) that the verdict of the jury is excessive.

We have carefully reviewed the testimony in this case and are of the opinion that it presented an issue of fact

for the determination of the jury as to the negligence vel non of appellant's servant and employee in the operation of the Cadillac automobile on the occasion in question. We therefore, find no error in the action of the trial court in refusing appellant's request for a peremptory instruction and in submitting the case to the jury. We are also of the opinion that there was ample evidence to support the jury's finding of negligence on the part of appellant. ▉▉ It is argued by appellant, however, that the evidence of purported contradictory statements made by the witness Crabtree on other occasions rendered his testimony incredible and unworthy of belief. These were matters, however, for the determination of the jury and were properly submitted to the jury. In the case of Illinois Central Railroad Company v. Humphries, 170 Miss. 840, 155 So. 421, 424, it was sought to have rejected the testimony of a witness who had made prior contradictory statements, and of this, the court said: "Wasson was contradicted by his statement in writing in the presence of witnesses; and it was sought to discredit him further because of the fact that he had been convicted of a misdemeanor. It is also said that his testimony is unreasonable. We think the credibility of Wasson as a witness on the stand, and the effect of the effort to impeach him on all lines, was distinctly a question for the jury, and we are strengthened in the view, for it is evident that the jury believed in the plaintiff's theory of the case, supported by the testimony of the witnesses. Not only that, but on the motion for a new trial the presiding judge of that court, who had heard the testimony and observed the demeanor of the witnesses on the stand, was better qualified to pass on that question, which he has done adversely to the contention of appellant."

▉▉ Appellant further contends that the court erred in refusing to permit the Highway Patrolman Parkinson to give his opinion from photographs introduced in evi-

dence as to whether or not the pick-up truck was running at an angle at the time of collision. We think this was a matter that the jury was as well qualified to pass upon as the witness, and that, therefore, the court committed no error in sustaining the objection to the testimony.

It is next contended by appellant that the court erred in refusing the following instruction, No. 10 in the Record, and requested by appellant: ▮▮▮ "The court instructs the jury for the defendant that if Roscoe Waid was driving said truck just prior to and at the time of the collision herein involved and by his acts as described in the evidence was guilty of negligence which was the sole cause of the collision and you believe that A. B. Waid knew or should have realized what Roscoe Waid was doing then there being no proof that A. B. Waid remonstrated with Roscoe Waid as to said acts you must determine liability in this case just as if A. B. Waid was driving said truck instead of Roscoe Waid just prior to and at the time of the collision and return a verdict for the defendant."

This instruction was clearly erroneous in undertaking to impute negligence to A. B. Waid because of failure to protest against the manner in which the pick-up truck was being driven by his brother, Roscoe Waid, when there was no proof that he did not protest or that there was opportunity to protest or that there was occasion to protest. We find no error, therefore, in the action of the trial court in refusing this instruction.

▮▮ ▮ It is finally contended by appellant that the verdict of the jury is excessive. The deceased, at the time of his death, was in good health and was 42 years of age, with a life expectancy of 27.62 years. He left surviving him his widow, who was 38 years of age; a son who was 19 years of age; a daughter who was 17 years of age; and another son who was 8 years of age, all of whom were deriving their livelihood from the deceased. The undisputed evidence is that he made his money

by farming, buying and selling cattle, dealing in timber, combining for the public, cutting hay, working at public gins, trading in lands, and that in the years 1945, 1946, and 1947 he was paid a salary of $1800.00 per year by a planting company, and that he spent in the support and maintenance of his family from $7,000.00 to $8,000.00 per year. His many occupations and the many activities in which he was engaged stamp him as an active, energetic and industrious man, of large and substantial earning ability. That the fruits of his earnings were contributed to his wife and children appears undisputed in the evidence. In fixing the amount of damages to be awarded, the jury was warranted in taking these matters into consideration, as well as the element of damages resulting from the loss of society and companionship, and we are unable to say that the verdict of the jury is so grossly excessive as to evince bias, prejudice or passion.

It follows, therefore, that the judgment of the court below should be and it is hereby affirmed.

Motion for certiorari overruled and judgment affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court and for the reasons therein indicated, the motion for certiorari is overruled and the judgment of the court below is affirmed.