LUM, et al. *v.* JACKSON INDUSTRIAL UNIFORM SERVICE, INC.

No. 43537 May 24, 1965 175 So. 2d 501

*Prewitt, Bullard & Braddock,* Vicksburg, for appellants.

*Vollar & Thames,* Vicksburg, for appellee.

Rodgers, J.

This is an action under the wrongful death statute, growing out of an automobile collision between a van type delivery truck and a Volkswagen, in which A. D. Lum, Jr. lost his life. The accident occurred about 1:30 P. M. April 15, 1963, on U. S. Highway 61, south of Vicksburg, Mississippi, near the entrance to the Le Tourneau plant.

The decedent, A. D. Lum, Jr., was a young man fifteen years of age, but was licensed to drive a Volkswagen which he owned. The events leading up to his death began on Clay Street in the City of Vicksburg, Mississippi. He stopped his Volkswagen to offer to drive two young ladies home. After they got in the car, A. D. Lum, Jr. mentioned that he knew of a good place to eat at Port Gibson. Thus, they proceeded on Highway 61, going south, toward Port Gibson. They stopped in a "Y" drive leading to Le Tourneau's plant in order to raise the top of the Volkswagen. They had to move once so as to let a truck go by and they were seen to move in behind another truck. The Volkswagen went out on the highway, going south, but it had only gone a few feet from the Le Tourneau entrance when a collision occurred with the "step van" type of truck belonging to appellee. The truck was being driven by Lonnie Joe Hall.

Appellee is engaged in the business of cleaning and furnishing uniforms to persons engaged as mechanics,

service station attendants and other like industrial workers. Mr. Hall has been traveling for some time a route through several towns, in order to pick up and deliver uniforms. The day of the accident, he had traveled his usual route, going north, and was on his way to Vicksburg. There is a conflict in the evidence as to the speed of the truck before it reached the hill leading down to the scene of the fatal accident. The distance from the crest of the hill south to the "Y" drive, leading to Le Tourneau's plant, is approximately 1,950 feet. Various witnesses testified that it was a long hill, and some of the witnesses saw the truck traveling down the hill a considerable distance while the horn was blowing, and "while the driver was standing on his brakes." Mr. Hall testified the distance to the Le Tourneau turn-off was approximately 500 feet and he stated he was 350 feet from the Volkswagen when he first saw it "pull into the highway." Other witnesses testified that the truck driver began to blow his horn as soon as he came over the hill going north, south of the Le Tourneau driveway. There is a conflict in the evidence as to the place in the highway where the collision occurred. Appellant's testimony shows the collision occurred in the west lane of the highway, the Volkswagen's proper lane of travel. The driver of appellee's truck claims that after he had started down the hill, he saw the Volkswagen in the east lane, (the truck's proper lane of travel), and that he began to blow his horn. He increased his speed, assuming that the Volkswagen would go over to its proper lane of travel, but as he approached the Volkswagen, he decided it was not going back to its lane of travel. He thereupon applied his brakes, pulled the truck against the guardrail on his right side and bounced back into the center of the road where he struck the Volkswagen near the center of the front left wheel. He claims that at the time of the impact, the Volkswagen was on the center line of the highway, travel-

ing at an angle across the highway from east to west toward its proper lane of travel.

The truck turned over and skidded down the highway on its side and was in the east lane of travel. The Volkswagen came to rest after the accident on its proper side of the highway, near the guardrail on the west side of the highway. The two young ladies in the Volkswagen were also injured and all of the occupants were hospitalized. One of them was unable to remember the accident, but the other young lady testified that the Volkswagen was in its proper lane of the highway at the time of the collision.

At the conclusion of the trial, the jury returned a verdict in favor of the appellee, defendant in the trial court.

Appellant complains that the court granted certain erroneous instructions, the first of which is as follows:

"The Court instructs the jury that it is negligence as a matter of law for anyone to drive an automobile on the left side or the wrong side of a highway and if you believe from the evidence in this case that A. D. Lum, Jr. drove his Volkswagen car on the left side or wrong side of the Highway 61 just before the collision herein complained of, then the said A. D. Lum, Jr. was guilty of negligence, and if you further believe from the evidence in this case that negligence was the sole proximate cause of the collision then it is your sworn duty to find your verdict for the Defendant."

■■ ■ It is argued that this instruction was confusing, and that the words "just before the collision" mentioned in the instruction was not a proper guide as to when the presence of the Volkswagen on the left side or wrong side of the highway was negligence. We are of the opinion, however, that Mississippi Code Annotated section 8181 (1956) requires the operator of a motor vehicle to drive upon the right half of the roadway,

except under certain conditions set out in the law, and if a motor vehicle is driven upon the wrong side of the highway at a time, not within the exceptions set out in the foregoing statute, such an operation of a motor vehicle is negligent; and if the driver's negligence was the sole cause of the accident, damages cannot be recovered for his injury caused by his own act.

██ █ This instruction was not erroneous and was properly granted under the facts in this case. Winfield v. Magee, 232 Miss. 57, 98 So. 2d 130 (1957); West v. Aetna Ins. Co. of Hartford, Conn., 208 Miss. 776, 45 So. 2d 585 (1950); Robinson v. Colotta, 199 Miss. 800, 26 So. 2d 66 (1946); White v. Weitz, 169 Miss. 102, 152 So. 484 (1934).

The appellee requested, and was granted, the following instruction:

"The Court charges the jury for the defendant that under the law when a motorist is driving in a reasonable and prudent manner and then is suddenly confronted with a sudden emergency not of his own making and is by reason thereof placed in a position of peril to himself without sufficient time in which to determine with certainty the best thing to do, he is not held to the same accuracy of judgment as is regularly required of him under ordinary circumstances but need only be held to that which would be required of a reasonable man under the unusual circumstances, and in this instance if you believe from the evidence that the driver of the Defendant's truck, who was injured in the collision, was immediately prior to the collision confronted with a sudden emergency which he did not create consisting of Plaintiff's vehicle traveling toward defendant's truck in defendant's proper lane of traffic and was by reason thereof placed in a position of peril to himself, then in weighing the evidence and in determining whether or not the defendant driver was guilty of negligence at the time

of the collision you may take into consideration all of the facts and circumstances as shown by the evidence and the situation with which the driver was confronted, and you must believe from a preponderance of all the evidence in this case that the driver of defendant's truck was guilty of negligence which contributed to the collision before the plaintiff is entitled to a verdict at your hands, and if the plaintiff has failed to prove to you by a preponderance of the evidence that the driver of the defendant's truck was guilty of negligence which contributed to the collision, then your verdict must be for the Defendant.''

■■ ■ This instruction is similar to the instruction granted to the defendant in the case of Ladner v. Merchants Bank & Trust Co., 251 Miss. 804, 171 So. 2d 503, rendered February 8, 1965. In that case, we held that the instruction should not have been granted for the ''reason that the evidence shows without dispute that the sudden emergency was an emergency of the defendants' own making.''

In the instant case, however, we are of the opinion that the facts shown by the appellee under its theory of the proximate cause of the accident is a typical, if not a classical, example of the situation where an instruction on the sudden emergency doctrine should have been granted. Appellee's testimony and theory of the case is that its driver came over the crest of a hill driving, as he claimed, in a legal manner, and suddenly a Volkswagen came out on the highway and approached him in his lane of travel. The truck driver became aware of the emergency, and thereafter, in order to avoid peril and injury to himself, he proceeded to act as a reasonable and prudent man similarly situated. He blew his horn, put on the brakes, and turned his truck as far to the right as he could — in fact, so far to the right — he struck the guardrail and bounced back, striking the Volkswagen near the center line of

the highway. Appellee was entitled to have the jury pass upon the question as to whether or not the driver of appellee's truck acted as a reasonable and prudent man under similar circumstances, after discovering the sudden emergency.

In the case of T. C. Peel v. Gulf Transport Co., 252 Miss. 797, 174 So. 2d 377, this Court went into considerable detail when a sudden emergency or sudden peril instruction should be granted. In the light of *Peel* and the cases previously decided by this Court with reference to the sudden peril doctrine, we are convinced that the instruction in the instant case was properly granted, under the theory of appellee's defense and the evidence introduced to sustain it. We find no reversible error in the other instructions complained of by appellants. Annot. 79 A. L. R. 1277 (1932).

The appellants assigned as error the action of the trial court in overruling an objection to certain opinion testimony of the Highway Patrolman. This issue arose under the following circumstances: Mr. Cecil Johnson, a Highway Patrolman, was introduced as a witness for appellant. He testified that he arrived at the scene of the accident a few minutes after the collision, and made a thorough investigation. He took pictures, made measurements, and secured the names of witnesses. He was asked and was permitted to give his opinion as to which car made the skid marks. The appellee-defendants objected to the opinion of the Highway Patrolman, and the trial judge overruled the objection. He was then asked his opinion as to the point of impact, or where the collision occurred. The witness was permitted to give his opinion as to where the impact occurred, and stated that it occurred in the west lane, two or three feet from the center line. On cross-examination of this witness, the following colloquy occurred:

"Q. Isn't it a fact that in that same conversation on Wednesday morning after the Monday accident and

after a thorough investigation of this matter that you told us after a thorough investigation that it was your opinion that this driver of the truck did everything in his power to avoid hitting these young teenage children that were in that automobile? BY MR. PREWITT: I object to that, Your Honor, as immaterial. BY THE COURT: Well, I'll overrule the objection. This is cross-examination. A. From the — Q. Just answer my question. didn't you tell us that? A. From my investigation, yes sir. Q. From your investigation it was your opinion that the driver of this truck did everything that he possibly could to avoid hitting this young teenage driver; didn't you tell us that? A. Yes, sir. Q. Well now, is that a fact? A. As far as I'm concerned it was. Q. As far as you're concerned, that's what you testify to this jury based on your investigation? A. Yes, sir. Q. And you are testifying now insofar as your investigation is concerned that this driver — after thorough investigation that this driver did everything he possibly could to avoid that accident? That's what you tell us now. A. As far as I was able to find out.''

Later, the Highway Patrolman was recalled for further testimony in rebuttal by appellants, and on cross-examination by appellee, he was asked: ''Q. So you are still telling the jury that, in your opinion, this man was doing all he could to avoid the accident and hitting these minors, is that right? A. Yes, sir.'' He was then asked on redirect testimony by the attorney for appellants: ''Q. Mr. Johnson, I will ask you whether or not that's based on what he told you?'' By Mr. J. D. Thames: ''I object to that, if your Honor please, because he said it was based on his whole investigation.'' By the Court: ''Well, I'll let counsel ask the question.'' By Mr. Prewit — resumes examination of witness: ''Q. Is that right, Mr. Johnson? A. Yes, sir, through my investigation and what the truck driver told me and what I found at the scene. Q. Was there any evidence

that this Volkswagen was in the other lane of traffic insofar as your investigation was concerned? A. No more than what the truck driver told me, no sir. Q. And was there evidence that the step van truck was in the lane of traffic of the Volkswagen? A. At the time of the impact? Q. Yes, sir, physical evidence. A. Yes, sir.''

Appellants strenuously argue that the introduction of this evidence over their objection on cross-examination was erroneous, and for that reason this case should be reversed.

After the case at bar was argued, it became necessary to present it to the Court En Banc, because of a change in the personnel of this Court. All of the Judges, except the writer, reached the conclusion that the (1) appellee had a right to impeach the opinion-evidence of the Highway Patrolman by showing his admitted contradictory statements, (2) the error was not preserved by an objection that this contradictory statement was opinion-evidence based upon conclusions and deductions derived from hearsay of other witnesses, and (3) that, without further objection, appellants proceeded to question the witnesses as to the alleged contradictory statement.

 █ We hold therefore that the trial court did not make a reversible error in permitting the introduction of the opinion of the Highway Patrolman under the circumstances shown in this record.

With all deference to the decision of my colleagues, the writer is constrained to point out that, in my humble judgment, the trial court committed reversible error in permitting the Highway Patrolman to testify that, from his investigation, he had reached the conclusion that the truck driver did all he could to avoid the accident.

It is a fundamental principle of evidence that the testimony of witnesses must be confined to the statement of facts within their own observation, knowledge and recollection as distinguished from mere opinions and

inferences. Annot. 23 A. L. R. 2d 119-138 (1952). It is true as a general rule that non-expert witnesses may give their opinion as to the identity of the vehicle making skid marks on the highway, (Wallace v. Billups, 203 Miss. 853, 33 So. 2d 819 (1948); 8 Am. Jur. 2d *Automobiles and Highway Traffic* § 990 (1963); Annot. 23 A. L. R. 2d 132, 1952), and testimony of physical evidence, describing the debris and things thrown from the vehicles. 32 C. J. S. *Evidence* § 438 (1964); 8 Am. Jur. 2d *Automobiles and Highway Traffic* § 1002 (1963); Blashfield, *Cyclopedia of Automobile Law and Practice* § 6316 (1954).

On the other hand, this Court has refused to permit non-expert witnesses to invade the province of the jury, and give their opinion on facts obtained by them, or information given them by other persons.[1]

It is contended, however, that the appellee's attorney did not object to the opinion-testimony given by the Highway Patrolman, except on one occasion and then only to the effect that the evidence was immaterial, and that the failure to make any other objection did not preserve the error, since the trial court did not have an opportunity to pass upon the objection. I am of the opinion that the objection was preserved, and the evidence should have been excluded.

In the case of Kennedy v. Aron, 179 Miss. 458, 176 So. 127 (1937), a grandfather was sitting on the porch near the highway at the time when an automobile struck his granddaughter and was in a position from which he could see the body of appellee's automobile, but on account of an intervening bank could not see the surface of the highway or the child. The grandfather immediately ran to the scene and there found his granddaughter lying about ten feet behind the automobile. The child was unconscious, and later died. On cross-examination, the grandfather was asked whether or not he stated to, or in the presence of, numerous parties on different

occasions, before his appointment as administrator, that the accident was unavoidable. He denied making such a statement to some of the named parties, and as to the others, he stated simply that he did not remember. To contradict the witness in this respect, over the objection of appellant, appellee was permitted to show by numerous witnesses that he had stated in their presence that the accident and the death of his granddaughter were unavoidable. The admission of this evidence was assigned as error, and this Court pointed out that it was reversible error, although the jury was instructed that testimony could only be considered as affecting the credibility of the grandfather. It seems to me that the Kennedy case is directly in point on the issue here involved as to the admissibility of this testimony.

In the case of Herrin, Lambert & Co. v. Daly, 80 Miss. 340, 31 So. 790 (1902), the Court said, in ruling on whether or not a ground for an objection was proper or whether continuous objection should be made, that:

"On the cross-examination by appellee's counsel of Lambert, one of the defendants below, as a witness, he was asked if there was any one back of his firm who would satisfy the judgment if obtained. The court overruled an objection to this, and we think this action error. It could not conceivably throw any light on the issue, and could have no other tendency than to seduce a verdict on the ground that an insurance company, and not the defendants, would be affected. The error was not cured, because, the objection having been put on the basis of irrelevancy and incompetency, and also for the further reason that the accident indemnity policy was in writing not produced, the writing was then read in evidence by plaintiff without renewed objection." (80 Miss. at 342).

In the case of Mississippi State Highway Commission v. Taylor, 237 Miss. 847, 116 So. 2d 757 (1959), this Court said on the question as to when an objection

should be made that "appellant made no objection to the competency of these witnesses until the end of the trial. The question of their competency as expert witnesses should have been raised by appellant at the beginning of their testimony." The appellees made their objection when the evidence was offered, and I believe this was sufficient.

The majority of the Court En Banc, having decided that the trial court did not make reversible error in permitting the Highway Patrolman to give his opinion, and since there is no other error in the record, the judgment of the trial court must therefore be affirmed.

Affirmed.

All Justices concur.

---

[1] We have said that tracks may not be identified by opinion-evidence. Payne v. State, 181 So. 715 (Miss. 1938). Annot. 23 A. L. R. 2d 117-131 (1952). We pointed out that one could not give his opinion as to the proper construction of a cattle guard in Kansas City, M. & B. R. Co. v. Spencer, 72 Miss. 491, 17 So. 168 (1895). We have said that a lay witness cannot testify that a railroad crossing is dangerous. Columbus & G. Ry. Co. v. Robinson, 189 Miss. 675, 198 So. 749 (1940); that a cold-chisel is defective, Kent v. Yazoo & M. V. R. Co., 77 Miss. 494, 27 So. 620 (1900); that one cannot give his opinion as to the legal effect of a contract, Stamps v. Bush, 7 How. 255 (1843); that a highway patrolman could not testify that a cow was struck with great force or where it was struck, Standard Oil Co. v. Crane, 199 Miss. 69, 23 So. 2d 297 (1945); that a log was too heavy to be carried by six men, Harris v. Pounds, 185 Miss. 688, 87 So. 891 (1939); that a police officer, who did not see an automobile wreck, could not testify that the automobile came into the intersection at the same time,—we said he could testify to what he saw but not to what

he believed,—Schumpert v. Watson, 241 Miss. 199, 129 So. 2d 627 (1961); a highway patrolman could not give his opinion from photographs as to whether or not automobiles in a collision were running at an angle at the time of collision, Delta Chevrolet Co. v. Waid, 211 Miss. 256, 51 So. 2d 443 (1951). We have held that a lay witness could not give his opinion as to the qualities of human behavior, as to care, safety, etc., as distinguished from other matters, etc., Ming v. City of Jackson, 202 Miss. 260, 31 So. 2d 900 (1947).