Nobie Cooper **BOOTHE** et al., Appellants,

v.

James O. **HOLMES** et al., Appellees.

No. 24949.

United States Court of Appeals
Fifth Circuit.

Aug. 19, 1968.

———◆———

George W. Rogers, Jr., Vicksburg,
Miss., Daniel R. Atkinson, E. L. Rich-

ardson, Baton Rouge, La., for appellants.

Lee Davis Thames, Vicksburg, Miss., Jerome Steen, W. Thad Cochran, Jackson, Miss., for appellees.

Before WISDOM and COLEMAN, Circuit Judges, and MITCHELL, District Judge.

COLEMAN, Circuit Judge:

This is a diversity case in which the plaintiffs (appellants here) sued James O. Holmes and his employer, the Ashland Pipeline Company, for personal injuries sustained in a motor vehicle accident on U.S. Highway 61, at a point about thirteen miles north of Woodville, Mississippi, January 30, 1965. The jury verdict was for the defendants. We reverse and remand for a new trial.

## I.

At the time and place in question, the appellant, Henry T. Cooper, was driving an automobile in a southerly direction, occupying the west lane of the highway. The other plaintiffs were passengers. The day was clear and cool, and it is not contended that Cooper was exceeding the lawful speed limit. Immediately prior to the accident, the road was relatively straight and level with only a slight curve which did not interfere with forward vision. In the curve the highway was crossed by a rural road which ran in an east-west direction. As they proceeded down the highway, those occupying the front seat of the Cooper automobile saw two approaching vehicles headed north and occupying the east lane of traffic. The first automobile was a white Mercury, driven by Richard Nettles, followed by a red pickup truck owned by the Pipeline Company but driven by its employee, Holmes.

Nettles lives on the intersecting rural road west of Highway 61 and was returning home from work at the Louisiana State Penitentiary. As he approached the intersection he slowed his vehicle with the intention of making a left turn. Holmes thought Nettles was preparing to turn right, so he swung his red pickup to his left and at least partially across the center line of the highway, in front of the oncoming Cooper automobile. According to Holmes, when he saw the oncoming car he immediately cut back into the right lane.

When Cooper saw the red pickup come across into his lane of traffic, he envisioned a headon collision and turned his car to his right, or to the west, leaving the highway and going down an embankment into a ravine, finally stopping against a concrete culvert in the ditch.

As a result of the accident, Mr. Cooper received an injured back and internal injuries, another plaintiff suffered a fractured arm, and a third plaintiff received a fractured leg, torn ligaments in both legs, and a severely sprained right ankle.

No witness testified to no more than a distance of 220 feet between the two vehicles at the time of the turn out. Since Cooper was driving at approximately sixty miles an hour and Holmes was driving at approximately forty miles an hour, the cars were approaching each other at the rate of 160 feet per second, and only 1.38 seconds would have been required to close the gap.

As to be expected in automobile accidents, particularly those which take place within seconds, the parties testified to categorically conflicting versions of what took place.

Cooper testified that the red pickup came entirely across into his lane of traffic "and I had one or two choices to make, not to sideswipe him, but hit him headon, or take to this ravine which is about fifteen feet deep".

The crucial testimony of Cooper in this respect was as follows:

"Q. Now, as you proceeded down Highway 61 South of Natchez, where did you first see this truck you were talking about?

A. I first saw the truck when it came out on my side of the road.

Q. Did you see it as it was coming out on your side of the road or

did you see it after it had gotten on your side of the road?

A. I was driving south and all of a sudden this pickup truck came out on my side of the road.

Q. How far away were you?

A. I couldn't tell you. There he was, right in front of me.

Q. Did you sound your horn?

A. I do not know.

Q. Did you apply brakes?

A. I do not know.

Q. All you know is you saw the truck?

A. I saw the truck and it was impossible to miss him.

Q. Now, let me ask you this, Mr. Cooper. Were you, did you see him actually moving across the center line, or did you just suddenly look up and there he—

A. (Interrupting) He came out on my side of the road, technically broadsided with the cab of his truck in my lane and the tail of his truck behind this other car. He was going towards the ditch that I went in and he cut it back and got parallel with the Mercury and there I was, just all in a matter of a few minutes, seconds; I didn't even have time to ask nobody anything. David Mayo says, he's gonna hit us, is all the words that were said and I, in our car, and as he said that, I left the road and went into this ravine to keep from hitting him headon.

Q. How much time elapsed, Mr. Cooper, between the time you saw the vehicle, this truck, and the time that Mr. Mayo said—

A. (Interrupting) Just barely seconds—

Q. (Interrupting) Seconds passed between that—

A. (Interrupting) I wouldn't say elapsed. He [Mayo] saw the pickup, I saw the pickup, I am sure my sister, if she had been looking, I don't know, but I saw the pickup, he says he's gonna hit us, I didn't even have time to answer him; I had to do what I had to do and do it immediately and I did, I taken to the ditch to keep from hitting him headon and that's the truth, so help me God".

Reverend David Mayo, a passenger on the front seat and owner of the automobile which was being driven at his request and permission, described the accident as follows:

"It was rather fast in happening and, therefore, you didn't have time to observe a whole lot. We were traveling, going south. There was a Mercury car and a pickup truck, red Ford pickup truck, meeting us, coming north, and just riding down the road meeting cars, you don't particularly pay any attention to the cars, all you know is you're meeting them and you assume you are going to pass them. For some reason or other, Mr. Holmes lost control of his pickup. His pickup skidded across in our lane of traffic and in the short few seconds this all took place, he pulled his truck back and it was directly in our lane of travel, all the way across the center line over in our lane, and as we were approaching him, I said, Coop, you are going to hit him, and he didn't say anything, but he pulled the car off the road, and by doing this, we went off the road and down in this ravine and came to rest up on the other side of the embankment".

Two other occupants of the Cooper vehicle agreed that the Holmes truck went completely over into the west lane.

On the other hand, the defendant Holmes testified:

"Well, it was a Mercury, I believe, was in front of me and he was kind of angling off the right at this crossroad, so I pulled over about, oh, I guess two feet where I could see around him and I seen this car coming at a high rate of speed, so I pulled

back in the line and the car went off on the shoulder and traveled a ways and then went off in the bar pit".

Upon further questioning by the Court, he testified as follows:

"BY THE COURT:

What would you say was the farthest distance that you ever got at the point of this accident west of the center line of this highway?

BY THE WITNESS:

Well, I say two or three feet.

BY THE COURT:

You never got farther than two or three feet west of the center line?

BY THE WITNESS:

No, sir.

BY THE COURT:

Never at any time?

BY THE WITNESS:

No, sir.

\* \* \* \* \* \*

"Well, of course, the rear wheel could have been little over it because I was turning that way.

\* \* \* \* \* \*

"I was getting ready to pass him until I seen this car".

We have quoted these excerpts verbatim because they pointedly and graphically illustrate the conflict between the plaintiffs and the defendants as to what really happened. The plaintiffs contended that under the circumstances existing Holmes was negligent in pulling his car into the oncoming lane of traffic and that this proximately caused the accident.

The defense contended that Cooper over-reacted and went into a panic when he saw the approaching truck move momentarily to the west of the center line, and that for this reason he drove his vehicle off the highway and into the ravine, although the width of the west shoulder of the highway could have been utilized to avoid any possible collision. They argued in the Court below, and here, that Cooper's negligence was the sole proximate cause of the accident.

II.

Plaintiffs filed a motion for a new trial, contending that (1) the verdict was against the overwhelming weight of the evidence and (2) that the District Judge erred in failing to grant two requested instructions [1] or to otherwise instruct the jury as to their theory of the case. Denial of the motion for a new trial resulted in this appeal, in which the same points are again pursued.

III.

As to the first point, appellants recognize the general rule that this Court will not normally review the denial of a new trial on the ground that the

---

[1] The first instruction was as follows:

"The Court instructs the jury for the plaintiffs that if you find from a preponderance of the evidence that the defendant, James O. Holmes, drove to his left side of the center of the road in attempting to overtake and pass the Mercury automobile and at such time such left side was not free of oncoming traffic for a sufficient distance to permit such overtaking and passing to be made without interfering with the safe operation of the vehicle of the plaintiffs coming from the opposite direction, then the defendant Holmes was guilty of negligence and if you further believe that such negligence, if any, was the direct and proximate cause of Mr. Cooper's driving the vehicle of the plaintiff off the highway, then your verdict must be for the plaintiffs in this case and against both the defendant, James O. Holmes, and the defendant, Ashland Pipeline Company".

The other instruction requested by the appellant was:

"The Court instructs the jury for the plaintiffs that if you of the jury find from a preponderance of the evidence that the defendant, Holmes, negligently drove the truck which he was operating across and into his left traffic lane, being the lane of traffic occupied by southbound traffic, when the oncoming car driven by Cooper was so close thereto as to logically and naturally cause Cooper to veer his car to his right and to have proximately caused the accident in question and injuries to the plaintiffs, then your verdict should be for the plaintiffs".

verdict is against the overwhelming weight of the evidence. Nevertheless, they rely on our decision in Indamer Corporation v. Crandon, 5 Cir., 1954, 217 F.2d 391, in which the reluctance to review the denial of a motion for a new trial was reaffirmed, but with the following language added:

"However, the rule is clear that an order denying a motion for a new trial, in a case where the absolute absence of evidence to support the jury's verdict makes such refusal an error in law, is subject to review by the appellate courts".

■ That part of the foregoing direct quotation, "where the absolute absence of evidence to support the jury's verdict", is fatal to the appellants' argument on this point. See also Helene Curtis Industries, Inc. v. Pruitt, 5 Cir., 1967, 385 F.2d 841. In the highly conflicting state of the testimony, including all inferences which might have been reasonably drawn therefrom, including credibility choices, we cannot say as a

matter of law that there was absolutely no evidence upon which the jury might have decided for the defendants. For example, the jury may have believed that Holmes was guilty of negligence but that his negligence did not proximately cause the accident. It is significant that plaintiffs never at any point moved for a directed verdict on the issue of liability.

The refusal to instruct the jury as requested (Footnote 1), coupled with the failure otherwise adequately to submit plaintiffs' theory of the case in appropriate instructions, requires that the judgment be reversed and remanded.

All that part of the jury charge containing any reference to negligence or the application of the law of negligence to the evidence in this case will be copied verbatim.[2]

■ In Lind v. Aetna Casualty and Surety Company, 5 Cir., 1967, 374 F.2d 377, this Court had occasion to define rather specifically the requisites for an adequate charge in automobile accident

2. "Now the plaintiffs in this case claim that these two defendants on this occasion were guilty of negligence, of some negligence in the operation of this motor vehicle on this occasion which proximately contributed to their personal injury and damage. The defendants, on the other hand, deny that they were guilty of any negligence on that occasion, and I will define negligence for you just a little bit later".

*   *   *   *   *

"Now, negligence is not a difficult word to understand. It's not particularly a word of art. It's defined as carelessness, or wrongful failure of a person to exercise the due care of a, of a reasonably prudent person for the safety of others. That's what negligence is. That's what this suit is about, about negligence or not. Negligence may consist of an act which unintentionally produces damages or causes injury to another, or it may consist of a wrongful failure to act under circumstances and conditions when a reasonably prudent person in the exercise of due care would have acted differently. Negligence is also defined as a breach or a violation of a legal duty to have exercised due care of a reasonably prudent person under given circum-

stances for the safety of another, resulting in unintentional damage or injury to such other person or his property.

"You are instructed as a matter of law that proof of injury is not proof of negligence. Proof of negligence is not proof of liability. The plaintiffs in this case must prove by the greater weight of the more convincing evidence three things. 1. That the defendants were negligent on the occasion in suit; and 2, that such negligence was the proximate cause of plaintiffs injury and damages; and 3, that the plaintiffs were injured and sustained loss and damages all as a proximate result thereof, the plaintiffs failing in either such respect to prove either one of those elements, it will be your sworn duty to return your verdict for the defendants".

*   *   *   *   *

"You are further instructed for the defendants that if you believe from the evidence that at the time and immediately prior to the collision complained of the defendants were free of negligence as same is defined herein by the Court, then your verdict must be for the defendants".

cases. We laid down the following rules: (1) If instructions properly and fully state the law applicable to a case, refusal to give specified requests or further requests is not ground for reversal; (2) where a state-created right is to be enforced, the state law must be looked to for the substance of the instructions; (3) if requested instruction in accord with party's contention is consistent with the evidence in the case, it must be granted unless the subject matter has been adequately covered in the charge; and (4) in an automobile intersectional accident case a failure to give plaintiff's requested instructions on state law relating to such an accident and instead merely giving bare-bones instructions on negligence, proximate cause, preponderance of evidence, weight of evidence, measure of damages, and unavoidable accident is reversible error requiring a new trial.

From an examination of Footnote 2 it will be seen that the charge below went no further than the foregoing subdivision 4. It did not look to state created rights nor did it really submit plaintiff's contentions in other than general terms. The requested instructions as copied in Footnote 1 should have been given.

The first requested charge was tailored to the provisions of § 8185(a), Mississippi Code of 1942 (Recomp.1956), which reads:

"§ 8185. Limitations on overtaking on the left.

(a) No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction".

As early as 1950 the Supreme Court of Mississippi in Cochran v. Peeler, 209 Miss. 394, 47 So.2d 806, held

"Of course, the violation of a law which regulates human conduct in the operation of vehicles on the roads becomes, by legislative fiat, negligence".

In Lum v. Jackson Industrial Uniform Service, Inc., 253 Miss. 342, 175 So.2d 501 (1965), the Court said:

"We are of the opinion, however, that Mississippi Code Annotated section 8181 (1956) requires the operation of a motor vehicle to drive upon the right of the roadway, except under certain conditions set out in the law, and if a motor vehicle is driven upon the wrong side of the highway at a time, not within the exceptions set out in the foregoing statute, such an operation of a motor vehicle is negligent * * *".

In Rayborn v. Freeman, Miss., 209 So.2d 193 (1968), the Mississippi Supreme Court held that § 8185 manifests "the intention of the legislature to prohibit a car from being on the left hand side of the road undertaking to pass another car going in the same direction while within 100 feet of any hazards. The entire statute puts emphasis upon the prohibiting of overtaking and passing another car headed in the same direction except at a safe distance from places where hazards and dangers might be anticipated". The Court further stated, "It is a well established rule of law long recognized by this Court that the original negligence of one party will not be insulated if the occurrence of the intervening cause might reasonably have been anticipated". This was a case in which the defendant motorist overtook a van truck which he could not see over or around or through and nevertheless attempted to pass at or near an intersection (also regulated by § 8185).

An identically similar situation was before the Mississippi Supreme Court in

Boyd Construction Company v. H. B. Bilbro, et al., Miss., 210 So.2d 637 (1968), in which a gravel truck was following a pulpwood truck, which the driver attempted to pass although he could not see around it. The Court said that the driver of the following vehicle "should have stopped or slowed down until the pulpwood truck ceased to obstruct his view. He should not have moved until he could see. Under the rule in Mississippi a motorist is presumed to see what he should have seen whether he saw it or not [citing cases]".

From the foregoing there is no avoiding the firm conviction that plaintiffs were entitled to have the first requested instruction given and that the failure to charge in this respect left the jury without the statutory guide for appraising Holmes' conduct as he turned to the left across the center line, and this is true whether he crossed it for only two or three feet, as he claimed, or crossed it altogether as appellants claimed.

On the same reasoning, the second requested instruction should likewise have been given.

Reversed and remanded.