209 So.2d 906 (1968)
Houston E. MARSH and John Thomas Shuford
v.
Alta JOHNSON, Individually and Andrew Lafayette Johnson, Jr., by Alta Johnson, Next Friend.
No. 44644.
Supreme Court of Mississippi.
May 6, 1968.
*907 Tubb & Stevens, West Point, for appellants.
John P. Moore, Starkville, for appellees.
BRADY, Justice:
The appellees obtained a judgment in the Circuit Court of Oktibbeha County in the sum of $24,500 on account of the death of the decedent, Andrew Lafayette Johnson. From this judgment this appeal is prosecuted.
John Thomas Shuford and a fellow employee, Perry Browning, were driving a truck belonging to Houston Marsh. They were proceeding eastward on U.S. Highway 82. Approximately fifteen miles west of Starkville, Mississippi, one of the front tires went flat. One of the dual wheels on the right rear was used to replace the flat tire. They then proceeded toward Starkville.
A car driven by Clifford Scales was traveling southward on Jackson Street in the city of Starkville. Jackson Street intersects Highway 82 at right angles and there are stop signs on this street at the point of intersection with the highway. The deceased husband of appellee and Clifford Scales' wife were passengers in the car. The accident occurred shortly after midnight on June 3, 1965, and no other traffic was on the highway.
Testimony on behalf of the appellee tends to show that the Scales car stopped at the intersection. No traffic could be seen approaching from the east or west so Scales proceeded across the highway. As the car reached the southwest quarter of the intersection it stalled. Efforts to start the car were unsuccessful. Maggie Scales stated she looked up and the appellants' truck was right upon them.
Appellants' testimony discloses that Shuford saw the Scales car as it approached the intersection. Shuford stated both vehicles were traveling about the same speed as they approached the intersection. He said when he realized the Scales car was not going to stop he applied his brakes.
Before striking the car, the truck traveled sixty-four feet with its brakes on, as evidenced by the tire marks on the highway. These marks did not go straight eastward, but deviated to the right in a southeasterly direction. The truck struck the car broadside and pushed it sideways down the highway an additional twenty-eight feet, as shown by tire marks made by the car. The force of the collision threw the occupants from the car onto the highway. The deceased and Scales' wife were rendered unconscious, and Clifford Scales was in a semi-conscious condition. The deceased did not regain consciousness until after reaching the hospital.
The appellants were charged in the declaration with negligence consisting of (1) failure to have proper equipment on the truck; (2) failure to keep a proper and adequate lookout ahead; (3) failure to have the vehicle under control at all times; (4) failure to drive within the range of the headlights; (5) failure to slow down at an *908 intersection; and (6) exceeding the speed limit of thirty miles per hour.
The tire marks made by the truck and car were measured by Chief of Police Thomas Josey and Officer J.O. McClelland. Shuford also told these officers he probably could have stopped if all four tires had been on the rear. He also stated at the scene that he was probably traveling about forty-five miles per hour when the accident occurred. On cross examination he admitted he had previously stated that he was probably traveling over thirty.
While numerous errors are assigned by appellants as grounds for reversal, we will treat only those errors which we consider merit attention.
Over the objection of the appellants, Police Chief Josey was permitted to testify as to what speed, in his opinion, the truck was traveling, based upon the observations of the tire marks he found at the scene. This, of course, was error and the police chief should not have been permitted to so testify. However, we hold that this error is not prejudicial. Aside from the testimony of Chief Josey the jury had before them the physical facts, photographs, and testimony of the parties, from which to make out a case of negligence against the appellants. Elliott v. Massey, 242 Miss. 159, 134 So.2d 478 (1961). The physical facts indicating excessive speed are the skid marks made by the car and truck, the pictures of the wrecked car, the bodies in the street and the fifteen broken ribs and crushed pelvis of the decedent. The court in permitting Chief Josey to give his opinion as to the speed of the truck, which was based on the skid marks, made the following statement subsequent to appellant's objection: "I am going to let it in for the reason he said he had been on the police force for thirty-one years, seventeen as chief, and had investigated many of these accidents. I am sure he has made investigation of these things." This is urged also by appellants as being prejudicial to their rights. We do not construe this to be a comment by the trial judge on the weight of the testimony but merely an explanation of why he thought the testimony was admissible. Since the proof in this case is sufficient to allow the jury to find that appellant's truck was traveling in excess of the legal rate of speed, the comments of the court as to why he felt Chief Josey should be permitted to so testify do not constitute reversible error.
Since no negligence was shown on the part of the defendant Scales, the trial court was correct in granting a directed verdict for Scales when the appellee-plaintiff rested. We do not believe that the jury accorded any undue value or weight to the testimony of Police Chief Josey as to the truck being operated at a speed of sixty miles per hour. The physical facts, including (1) the pictures of the 8800 pound truck jammed against the old automobile of Scales, (2) the force of the impact shown on the car and the pictures of the wrecked car, (3) the ninety-two feet of truck and car skid marks, (4) the bodies of the occupants of the car lying in the street, one of which was literally crushed to pieces by the force of the truck's impact, and (5) the fifteen broken ribs and fractured pelvis of the deceased, furnished with sufficient certainty evidence as to the truck's actual speed at the time of the collision. This evidence is conclusive and the jury could have determined the speed of appellant's truck irrespective of the inadmissible evidence of Chief Josey.
The deceased Negro man had an earning capacity of $70 a week and had a life expectancy of 19.34 years; he was in good health, and left a wife and child who were dependent on him for support. For five days before his death he was racked with pain and suffered so that he had to be kept under narcotics in order to endure the same. The verdict of $24,500 was a modest and reasonable one considering the injuries, the suffering and death of the decedent, together with all damages recoverable by the appellees.
While it is unnecessary for us to rely upon Rule 11 of the Rules of the Supreme *909 Court of the State of Mississippi, nevertheless we point out that in our effort to avoid a miscarriage of justice occasioned by utilization of strict and technical requirements, this Court has adopted Rule 11, which provides as follows:
No judgment shall be reversed on the ground of misdirection to the jury, or the improper admission or exclusion of evidence, or for error as to the matter of pleading or procedure, unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice.
The jury was justified in finding under the admissible evidence in this record that appellee's decedent was a guest in the Scales car; that the deceased was guilty of no negligence whatsoever; that he was fatally injured, suffered intense physical and mental pain and anguish for five days, and died. The record discloses that he was injured by either the sole proximate negligence of the appellants or the concurrent negligence of two joint tort feasors.
Except where it shall affirmatively appear that a miscarriage of justice will result, we have refused to reverse because of a technical error in evidence. Summerall v. State, 206 Miss. 878, 41 So.2d 51 (1949); Countryman v. State, 204 Miss. 117, 37 So.2d 21 (1948); and Lewis v. State, 173 Miss. 821, 163 So. 387 (1935).
For the foregoing reasons, the judgment of the lower court is affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, PATTERSON and INZER, JJ., concur.
SMITH, J., ETHRIDGE, C.J., and JONES and ROBERTSON, JJ., dissent.
SMITH, Justice (dissenting):
This was an appeal by Houston E. Marsh and John Thomas Shuford from a judgment recovered against them in the Circuit Court of Oktibbeha County by Alta Johnson and Andrew Lafayette Johnson, Jr., surviving heirs at law of Andrew Lafayette Johnson, Sr., for his wrongful death. Five of the justices have voted to affirm. I must dissent, with deference to the majority. In my opinion, fundamental requirements of the traditional concept of a fair trial demand that the case be reversed and sent back for retrial before another jury.
Two errors were committed in the trial of the case, either of which alone, in my opinion, was sufficiently prejudicial to the rights of appellants to require reversal and retrial.
First, incompetent evidence was admitted upon the two key factual issues, and second, the trial judge's comment upon this evidence bore directly upon its weight and trustworthiness.
The majority concedes that the evidence was incompetent but says, in effect, that because the comment of the judge upon its weight was made in the course of overruling appellants' objection to the incompetent evidence, it was not prejudicial.
Andrew Lafayette Johnson, Sr. died of injuries received shortly after midnight on June 3, 1965, when the automobile in which he was riding as a passenger was involved in a collision with a truck belonging to appellant, Houston E. Marsh, and being driven by his employee, appellant John Thomas Shuford. The collision occurred in the City of Starkville at the intersection of Jackson Street, which runs north and south, and U.S. Highway 82, which runs east and west. The automobile was proceeding south in the west lane of Jackson Street; the truck was traveling east in the south lane of U.S. Highway 82 and had the right-of-way. The collision occurred in the southwest quadrant of the intersection.
The truck laid down sixty-four feet of skid marks. Photographs in the record show that the car was struck squarely in the center of its right side by the front of the truck. The rear wheels of the automobile *910 were driven eastward about twenty-eight feet and its front wheels about twenty-two feet as indicated by marks on the pavement. It is unclear whether these measurements included the width of the car.
Traffic controls at the intersection consisted of an overhead traffic light, which was not operating at the time (it had been turned off that night, as usual, at 10:30) and stop signs on Jackson Street which required all traffic on that street to stop before entering the highway. Vehicles ascended a slight grade as they approached the highway on Jackson Street from the north. At this point, the highway was straight and visibility unobstructed for a considerable distance in each direction.
The suit was brought against Clifford Scales, driver of the automobile in which the decedent had been a passenger, as well as against the appellants.
The declaration alleged, among other things, that Scales "either stopped or slowed down at the stop sign and proceeded to cross Highway 82 going south" and was hit by the truck. It charged that appellant, John Thomas Shuford, was driving the truck at an excessive rate of speed and in violation of an ordinance of the City of Starkville fixing the speed limit at 30 miles per hour at the point where the collision occurred.
There were no eyewitnesses to the collision other than the occupants of the automobile and truck. Upon the trial, the main thrust of appellees' case was that the truck was being driven at such an excessive rate of speed that it could not be stopped, and as a result, ran into the Scales' automobile killing Johnson. At the time, the Scales' automobile was occupied by Scales, who was driving, Scales' wife, and Johnson, who was killed.
Scales did not testify. However, his wife was introduced as a witness by the plaintiffs. At this time, Scales was a defendant in the case. Her testimony was directed toward exculpating him by placing the entire blame for the collision upon the driver of the truck. She said that Scales had come to a full stop at the stop sign, had looked both ways down the highway and "didn't see anything." He then entered the highway, but as he did, the engine of his automobile died and he could not restart it. The car was then standing completely still "out in the middle of Highway 82" and there remained while "a good little bit of time elapsed." None of the occupants left the automobile, but remained seated in it until it was hit by the truck. Suddenly, after the car had sat in the highway for some unspecified length of time, Johnson cried out "lights" and at that moment, according to the testimony of this witness, the truck was only a foot or a foot and a half away, and immediately struck the automobile. She testified that they did not see the truck at all until it had approached within that distance.
Aside from medical and other testimony relating exclusively to the question of damages, the only evidence, other than the testimony of Scales' wife, offered by plaintiffs consisted of the testimony of three police officers of the City of Starkville, who arrived after the collision. One of these officers testified that he had confined his activities chiefly to directing traffic; and another testified as to the location of traffic and speed signs, and of the two vehicles and to various measurements and distances about which there is little, if any, dispute.
Some time after the first two officers got there, the chief of police arrived. This officer testified as a witness for appellees-plaintiffs. He said that he had been a member of the Starkville Police Force for thirty-one years, and had been its chief for seventeen years. He stated that over the thirty-one years of his service on the police force, he had "investigated numerous automobile accidents" in his official capacity.
Thereafter, it appears that he was considered to have qualified as an expert on the subject of "automobile accidents" and, *911 over the strenuous objection of the appellants-defendants, was allowed to express his opinion as to what had occurred and to reconstruct the events which had immediately preceded the collision. Appellants contend that the action of the trial court in permitting him to do so was error, that it invaded the province of the jury and was highly prejudicial.
Appellants complain especially as to this portion of the witness' testimony.
Q. Chief, let me ask you this question. Based on your prior experience investigating accidents, did you reach any conclusion as to this man's speed immediately before he hit his brakes?

BY MR. TUBB: We object.

BY THE COURT: Overruled.
A. In my opinion he had to be going fifty or sixty miles an hour.

BY MR. TUBB: Object to his opinion as to speed when he wasn't present and didn't see it because it hasn't been shown and established yet that he is an expert on physical facts from which he can conclude what the speed of a vehicle is.

BY THE COURT: I am letting it in for the reason he said he had been on the police force for thirty-one years, seventeen as Chief, and had investigated many of these accidents. I am sure he has made investigation of those things.

BY MR. MOORE:
Q. All right, now would you answer the question again, please, sir? I said based upon your prior experience in investigating accidents, did you reach a conclusion as to the speed of this truck immediately before the driver hit the brakes?
A. Well, my opinion was that he was going in the neighborhood of sixty miles per hour.
All of the justices appear to agree that it was error to allow this witness to give his opinion as to the speed of the truck immediately prior to the collision. The weight of authority supports the view that this evidence was incompetent and should not have been admitted. Evidence of this type has been condemned by this Court. Saucier v. Talkington, 251 Miss. 519, 170 So.2d 434 (1965); Hagan Storm Fence Co. of Mississippi v. Edwards, 245 Miss. 487, 148 So.2d 693 (1963); Gray v. Turner, 245 Miss. 65, 145 So.2d 470 (1962); Schumpert v. Watson, 241 Miss. 199, 129 So.2d 627 (1961).
In Hagan, supra, this Court said:
It should be observed that [the expert] Mr. Doyle had no facts before him on which to reach his conclusions that the jury did not have.
* * * * * *
In this state a trial by jury is guaranteed by our State Constitution. It is the view of the writer of this opinion that the testimony of Doyle was a clear invasion of the province of the jury, and this Court has repeatedly rejected testimony which has undertaken to invade the province of a jury. 245 Miss. at 492, 148 So.2d at 695.
* * * * * *
It has been the uniform rule in this state that we let the witness tell the facts and leave it to the jury to determine the conclusion to be drawn from the facts. 245 Miss. at 493, 148 So.2d at 695.
The majority opinion takes the position, however, that the error was harmless and did not prejudice appellants' right to a fair trial. With that conclusion I am unable to agree.
The evidence in this case is in irreconcilable conflict upon two key factual issues upon which this incompetent evidence bore directly. It was the theory of appellees, as plaintiffs at the trial, that (1) the truck was being driven at a speed which was illegal or excessive, or both, and (2) such illegal or *912 excessive speed was a proximate contributing cause of the collision and the death of Johnson.
No witness for plaintiffs having actual knowledge of the subject testified directly as to the speed of the truck. Nor does the testimony of the wife of the driver of the automobile, that its occupants did not see the truck until it was a foot or a foot and a half away, shed any light upon that question. Aside from the physical facts, discovered after the collision, plaintiffs' entire case as to the speed of the truck was based upon the testimony of the police chief. This consisted of (1) the alleged admission made to him by the truck driver, and (2) his opinion, which he was permitted to express because, the court said, he had officially "made investigation of those things" (automobile accidents) in the course of his thirty-one years as an officer, his opinion being that marks on the pavement established that the truck had been traveling at a speed in the neighborhood of 60 miles per hour at the time.
Plaintiffs' case, as made by the evidence appearing in the record, in substance, is that the car in which the decedent was a passenger had stopped at the stop sign, its driver had looked both ways, and nothing was visible approaching on the highway. He then proceeded on to the highway, but the automobile engine died and the car came to rest near the center or in the south lane of the highway. Again the occupants of the car looked down the highway and still nothing was observed approaching. None of the occupants got out of the car and all continued to sit in the car as it stood in the highway and its driver continued his efforts to start the engine. After some time had elapsed, according to the automobile driver's wife's testimony, the truck was observed for the first time, but it was not seen even then by anybody until it had approached within a foot or a foot and a half of the automobile, although it is undisputed that the truck laid down sixty-four feet of skid marks.
As opposed to this, the truck driver and his companion testified that they reduced their speed to between 25 and 35 miles per hour as they passed through Starkville, and the driver said he slowed down as he approached the intersection by lifting his foot from the accelerator. They said the automobile was observed on Jackson Street as it approached the stop sign at the entrance to the highway, and that it neither stopped nor slackened speed but continued into the highway and into the path of the truck. The truck driver testified that as soon as he observed that the car was not going to stop but was going to enter the highway in front of him, he applied his brakes hard, but that the car continued across the highway in front of him and that he was unable to stop in time to avoid striking it.
It will be observed that the two versions are in hopeless conflict and are incapable of being reconciled. In that state of the record, it was not suggested that appellees were entitled to a peremptory instruction upon the issue of liability. Neither is the question here whether the evidence supporting appellees' case was sufficient to make a factual issue for determination by the jury. If that were the question, on appeal the successful plaintiffs' evidence, with all reasonable inferences to be drawn from it, would be accepted as true. But the issue here is an entirely different one. The sufficiency of the evidence to support a verdict for plaintiffs is not the issue, and it may be conceded that the evidence was capable of supporting a verdict for either party.
The question here is this: did the admission of clearly incompetent evidence upon key factual issues, coming as it did from an official and prestigious source and carrying with it what must have seemed to the jury to be the approbation of the trial judge, prejudicially affect appellants' right to have their case fairly submitted to and determined by the jury?
It goes without saying that every person is entitled to have his case go to the jury *913 unaffected by incompetent evidence. However, it can be said with reasonable safety in some cases, that incompetent evidence improperly admitted, may be shown to have been incapable of affecting the result or that no other result could have been reached in any event. But that is not the case here, where incompetent evidence was admitted which, because of its nature in relation to the issues, was capable of unduly influencing the jury or of becoming a material or controlling factor in the making up of its verdict. Particularly is this true where the source of the incompetent evidence (as from the officer charged with making the official investigation) is such as to make it probable that the jury accorded it undue value or weight. In the present case, the witness was, and had been for seventeen years, chief of police, and for thirty-one years he had officially "investigated numerous automobile accidents." On that basis the court ruled that he was an "expert," with the effect that he testified to the result of his investigation made in his official capacity as one having special knowledge and with no interest in the outcome of the case. The result of all of this was that appellants' case went to the jury charged with a burden greater than they should have been called upon to bear.
The question of speed was directly in issue. The truck driver denied having stated that he was going 45 miles an hour although he admitted that he had told the officers that he thought he had probably been going between 25 and 35 miles per hour. Appellees argue that this was an admission of a violation of law and constituted negligence per se. But this is materially different from the conclusion of the police chief that the truck had been traveling in the neighborhood of 60 miles per hour, particularly as it bears upon the issue of whether negligent speed had been a proximate contributing cause of the collision.
In Yazoo & Mississippi Valley R.R. v. Aultman, 179 Miss. 109, 173 So. 280 (1937), this Court had under consideration a statute (Mississippi Code 1930 Annotated section 6130), which provided, in part, as follows:
Any railroad company having the right of way may run locomotives and cars by steam through cities, towns and villages, at the rate of six miles an hour and no more; and the company shall be liable for any damages or injury which may be sustained by anyone from such locomotive or cars whilst they are running at a greater speed than six miles an hour through any city, town or village.
In that case, plaintiff had obtained an instruction, based upon this statute, which informed the jury that:
[T]he company shall be liable for any damages or injury which may be sustained by anyone from such locomotive or cars whilst they are running at a greater speed than six miles per hour * * *.
This Court reversed a judgment recovered by the plaintiff, who had been injured when the automobile in which he was a passenger had run into a train at a crossing, which was alleged to have been exceeding the speed limit fixed in the statute. It was held that, notwithstanding the language of the statute, and although its violation constituted negligence, nevertheless it was essential to recovery that it also be established that such speed was a proximate contributing cause of the injury.
Shaw v. Phillips, 193 So.2d 717 (Miss. 1967) was a suit for personal injuries by Shaw against Phillips as a result of an automobile collision. The court directed a verdict for Phillips, and Shaw appealed. It was contended by appellee Phillips in the cited case that the judgment should be affirmed because it was established that Shaw had been operating his vehicle while intoxicated in violation of law. This Court rejected that contention and reversed saying, "It is negligence to operate a vehicle while intoxicated. However, this negligence, *914 as any negligence, must be causally related to the accident." 193 So.2d at 718.
It cannot be said that this is a case where the evidence for plaintiffs-appellees is so cogent or compelling, or so conclusive or overwhelming, that the minds of reasonable men are required to accept it. Actually, only one witness for appellees, Scales' wife, gave direct evidence as to how the collision had occurred. And, in addition to the somewhat bizarre nature of her version of the "facts," the triers of fact, in this case the jury, were entitled to consider that she was not an entirely unbiased witness, but had a real interest in exculpating her husband. Humes v. Krauss, 221 Miss. 301, 72 So.2d 737 (1954). The record also discloses that this witness is plaintiff in a pending companion case against these same appellants. Without the prejudicial matter, the jury could have, and in my opinion, probably would have, found for appellants. No question is presented that the evidence was not sufficient to make a case for the jury on the issue of liability, even without the opinion of the police chief, but even if it had been of greater weight than the countervailing evidence for the defendants (and it seems to be a good deal less reasonable), it did no more than that. The defendants were entitled to have that issue passed upon by a jury unaffected by testimony of this type. Mississippi Code 1942 Annotated section 1455 provides: "All questions of negligence and contributory negligence shall be for the jury to determine."
In order that all such questions may be fairly determined by the jury, upon their merits and not otherwise, rules of evidence have evolved over the centuries. It has been wisely said that, "The judicial process demands that courts move within the framework of relevant rules." Here, an official public investigator was allowed to draw conclusions from physical evidence discovered after the event and to express therefrom an opinion highly prejudicial to defendants as to what had occurred before. This was an unwarrantable invasion of the province of the jury as the finder of facts. The force of the testimony was heightened immeasurably by the court's ruling, which had the effect of informing the jury that the witness was an expert as the result of official experience and qualified to make the deduction expressed. Under these circumstances, I am unable to agree that the admission of this incompetent testimony upon the key issues in the case was without harmful or prejudicial effect and played no part with the jury in reaching its verdict.
Obviously counsel for appellees considered it important that this evidence go to the jury, because they were at some pains to get it admitted. The judge thought it was relevant and material as he admitted it and commented favorably upon its trustworthiness over strenuous objection, and, since courts have long recognized that the comments and attitudes of the trial judge exert a powerful influence upon jurors, it cannot be assumed that it played no part with the jury in arriving at its verdict.
The true inquiry upon this appeal is (or should have been) whether appellants were denied a fair trial of the factual issue, upon the rather evenly balanced competent evidence. To accept, or to regard as true, only the evidence favorable to appellees (as would be the case if the court were considering the propriety of a peremptory instruction granted a defendant) affords a wholly mistaken premise upon which to rest a conclusion that they were not. The very existence of a sharply drawn factual issue demanded extreme care that prejudicial matter should not be allowed to impinge upon it. While the jury system has great merit, I find the idea novel that jurors, usually ordinary laymen, are so discriminating, or capable of such nice distinctions, or so learned in the law, that it may be safely assumed that of evidence submitted to them they considered only the competent and rejected the incompetent, especially where, as here the latter is admitted by the trial judge and goes to the jury with his approval as a proper matter to be taken *915 into consideration and as being the expression of his opinion by an expert fully qualified to speak upon the subject. The court's comment, moreover, lent stature to this witness who was also used to contradict the truck driver as to admissions alleged to have been made by him. All of this combined, in my opinion, denied appellants a fair trial, within the traditional meaning of that phrase and as encompassed within the fundamental requirements of due process.
Constitutionally, the role of this Court is appellate. The deciding of the factual issue was for the jury, not for us. The function of this Court, as well as its justification for being, is to insure the fair trial of causes. That a litigant has been deprived of a fair trial quite innocently, through inadvertence or understandable human error to which all mankind is subject, renders the result to him not one whit less disastrous. But I am apprehensive that the decision in this case, based as it is upon a "harmless error" theory, will return to haunt us for all time to come. For if the incompetent evidence submitted to the jury, coupled with the trial judge's comment upon its worth, were "without prejudice" to appellants' right to a fair trial, I confess that I am incapable of conceiving anything that would be.
Neither an enumeration of the injuries sustained by the deceased when he was thrown out onto the pavement when the car door flew open, nor a description of the skid marks left upon the pavement can be equated with the testimony of the police chief upon the issue of speed.
Consider the latter for a moment in the context of the trial. The police chief was the one witness the plaintiffs had who testified in support of their theory of excessive speed. Can it be supposed for a moment that counsel could allow the jury to overlook or forget his testimony? No trial lawyer having this weapon placed in his hands would have failed to use it. Here he would have had to do so. But in any case he would have been derelict in his duty, if, in his argument to the jury, he omitted to emphasize and dwell upon this testimony, ruled competent by the court and which was essential to his theory of the case. Reason and experience reject the suggestion that he would do otherwise. Whether this witness, who had been a local official in the community for thirty-one years, was or was not known to members of the jury at least by sight or reputation, is beside the point. Suffice it that his office and connection with the case were such as to support an argument that he acted officially and was wholly disinterested in the outcome. The court's comment supporting his qualifications, followed, it must be assumed, by the argument of counsel to the jury, renders it inconceivable that it played no part in the jury's verdict.
It is true, indeed, that on account of the imperfections incident to human nature perfect truth may not always be attained, and it is well understood that exact justice cannot, because of the inability of courts to obtain truth in entire fullness, be always administered. We are often compelled to accept approximate justice as the best that courts can do in the administration of the law. But, while the law is satisfied with approximate justice where exact justice cannot be obtained, the courts should recognize no rules which stop at the first when the second is in reach. Schroeder v. Chicago, R.I. & P.R. Co., 47 Iowa 375, 379 (1877) (Beck, J.).
In this case, I think exact justice was within our easy reach, that its attainment required only a remand for a new trial before another jury upon competent evidence only, so that a true verdict might be rendered uninfected by prejudicial considerations.
ETHRIDGE, C.J., and JONES and ROBERTSON, JJ., join in this dissent.